UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE UPS STORE, INC., *et al.*,                    :

               Plaintiffs,          :

       -against-                              :

ROBERT HAGAN, *et al.*,                            :

             Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 3/24/15

14cv1210

<u>MEMORANDUM & ORDER</u>

WILLIAM H. PAULEY III, District Judge:

       The UPS Store, Inc., United Parcel Service, Inc., and United Parcel Service of America, Inc. (collectively, "UPS") bring this action for breach of contract and trademark infringement against Robert Hagan, Thomas Hagan, and the entities they operated (collectively, "the Hagans"). The lawsuit stems from UPS's termination of the Hagans' franchise agreements for eleven UPS Stores in New York. The Hagans respond to the lawsuit with a salvo of counterclaims against UPS and other franchisees in Manhattan named as counterclaim defendants ("Franchisees").[1] UPS and the Franchisees (collectively, "Counter-Defendants") move to dismiss the counterclaims. For the following reasons, the Counter-Defendants' motion to dismiss is granted in part and denied in part.

       A troubling trend toward prolixity in pleading is infecting court dockets in this district and elsewhere. As this case illustrates, a growing number of attorneys, from solo practitioners to "big law" partners, are ignoring Rule 8 and its exhortation that "[a] pleading . . . must contain . . . a short and plain statement of the claim . . . ." Fed. R. Civ. P.

---

[1] As the Counter-Defendants point out in their motion papers, the Hagans mistakenly characterize the Franchisees as "Third Party Defendants" when they in fact are additional counterclaim defendants.

8(a)(2); see also Fed. R. Civ. P. 8(d)(1) (requiring that allegations be "simple, concise, and direct"). UPS launched its relatively straightforward claims with a sprawling 175-paragraph Complaint, larded with more than 1,400 pages of exhibits. That initial pleading, masquerading as a summary judgment motion, may have been intended by UPS to overwhelm the defendants. But the Hagans were not deterred. They retaliated with a 210-page, 1,020-paragraph Answer asserting twelve counterclaims and attaching voluminous exhibits.

UPS and the Franchisees sought leave to move to dismiss the Hagans' counterclaims. At a pre-motion conference, this Court expressed concern about the length of both side's pleadings. (Conf. Tr. 2-3, 4, July 18, 2014, ECF No. 30.) UPS's counsel attributed UPS's lengthy pleading to predecessor counsel, yet never offered to prune the Complaint. In turn, the Hagans' counsel proposed amending their Answer and counterclaims to identify the franchisee counter-defendants. This Court urged the Hagans to downsize their pleading when naming the franchisee counter-defendants. (Conf. Tr. 14.)

Several weeks later, the Hagans interposed their Amended Answer with counterclaims naming the Franchisees. Instead of shrinking their pleading, they enlarged it to a breathtaking 1,263 paragraphs, spanning 303 pages. It brims with irrelevant and redundant allegations. This Court convened another conference among counsel in an effort to end the madness and avoid a motion. But that, too, proved futile. And so, more than a year after this action was filed, the parties continue to spar over their behemoth pleadings.

The "short and plain" statement requirement of Rule 8 serves many salutary purposes. It focuses litigants and judges on the real issues in dispute. It also aids the public in understanding the judicial process. Disregarding it only spawns mischief.

Voluminous pleading is self-defeating. It chokes the docket and obscures otherwise meritorious claims and defenses. It can also unnecessarily highlight fatal weaknesses in a party's case. "[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." Wireless Ink Corp. v. Facebook, Inc., 787 F. Supp. 2d 298, 307 (S.D.N.Y. 2011) (quoting Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995) (Posner, J.)). Lawyers should think twice about the burden they impose on judges to wade through surfeit pleadings, let alone "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension." Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972); see also Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) ("The statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'"). They should also think about their clients who presumably come to court "to secure the just, speedy, and inexpensive determination" of their claims. Fed. R. Civ. P. 1.

There is ample authority empowering a court to dismiss pleadings for failure to comply with Rule 8. See Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) ("Rule 41(b) clearly authorizes dismissal where plaintiffs have 'fail[ed] . . . to comply with these rules [i.e. the Federal Rules of Civil Procedure],' including, of course, Rule 8."); Salahuddin, 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to dismiss the complaint."). And that might be an appropriate way to dispose of the Hagans' counterclaims, if not the entire case. But the Hagans could view a Rule 8 dismissal as unfair because UPS was just as culpable in filing its outsized Complaint.

Recently, Senior Judge Glasser lamented about needlessly long pleadings and offered a solution that was undoubtedly effective in its time but would not likely be countenanced today.  Quoting Lord Buckmaster, formerly Lord Chancellor of England, Senior Judge Glasser related that

> in the reign of the Stuarts there was one counsel who had offended the court by preparing a needlessly long and prolix pleading on parchment.  He was ordered to have his pleadings taken, a large hole to be cut in the middle, he was to have his head pushed through it, and he was to attend the first day of the term of every court with his head through the pleadings.

Brooklyn Downtown Hotel, LLC v. New York Hotel & Motel Trades Council, AFL-CIO, No. 14-cv-6067 (ILG), 2015 WL 779441, at *3 (E.D.N.Y. Feb. 25, 2015) (quoting Lord Buckmaster, The Romance of the Law, 11 A.B.A. J. 579, 581 (Sept. 1925)).

While Lord Buckmaster's in terrorem remedy is tempting, this Court fashions a pragmatic solution aimed at advancing this litigation beyond the pleading stage for the benefit of the litigants.  This Court will address each of the counterclaims on their merits, giving many of them more thought than they deserve.  And because all but one of the Hagans' counterclaims will be dismissed, the parties will be directed to submit amended pleadings that clearly and concisely present the issues and comport with the strictures of Rule 8.

## BACKGROUND

Astonishingly, and as belied by the length of the pleadings, the pertinent factual allegations can be distilled in a few paragraphs.  For purposes of this motion, they are accepted as true.  Beginning in 2008, the Hagans operated UPS franchise stores in New York City.  Over four years they grew their franchise network to eleven separate stores and executed a Franchise Agreement and Contract Carrier Agreement with UPS for each store.  (First Amended Answer with counterclaims ("FACC") ¶¶ 226, 421.)  Among other covenants, the Hagans agreed that

4

they would not charge customers more than the UPS Retail Rate, which established maximum pricing models for UPS Ground and Air services. (FACC ¶¶ 237, 564.)

In July 2013, UPS undertook an investigation into the Hagans' business practices to ascertain compliance with UPS pricing policies. (FACC ¶¶ 470–78.) Posing as customers, UPS agents made undercover purchases at the Hagans' stores. (FACC ¶¶ 50, 480, 485, 488.) UPS notified the Hagans it found a "widespread pattern of improper and dishonest conduct" in the Hagans stores and reserved the right to terminate their franchise agreements at will if they did not become fully compliant with UPS policies. (FACC ¶ 35.) The Hagans then met with UPS executives in San Diego, California. (FACC ¶¶ 36-37, 533-37.) Following that November 2013 meeting, the Hagans agreed to focus on compliance and implement a "Transparency Sales Model." (FACC ¶ 535-36.) Nevertheless, in December 2013, UPS sent notices of default for nine of the Hagans' eleven stores—the same stores where UPS identified overcharges had occurred through its investigation. (FACC ¶¶ 9, 542-43.)

After the California meeting and prior to the notices of default, the Hagans launched an investigation of their own into pricing practices by other franchisees while implementing their Transparency Sales Model. (FACC ¶¶ 558-60.) They hired a licensed private investigator who engaged in undercover transactions from November 2013 through January 2014 at over forty UPS Stores in Manhattan. (FACC ¶ 1010.) That investigation purportedly revealed that other UPS franchisees were overcharging customers by, for example, overstating the dimensions and weights of packages to increase their billable weight, and by misleading customers into unnecessarily selecting more expensive shipment options by misrepresenting which services were "guaranteed." (FACC ¶¶ 43, 553–904.) Because the Hagans had discontinued these practices, their shipping rates and services differed from other

stores.  (See, e.g., FACC ¶ 560.)  When customers noticed these discrepancies and potential

overcharges, they declined to do business with UPS altogether.  (FACC ¶ 561.)

       The Hagans reported their findings to UPS.  (FACC ¶¶ 3-4, 1011.)  Thereafter, in

February 2014, UPS terminated its franchise agreements with the Hagans.  (FACC ¶¶ 47, 551-

52, 977.)  Several weeks later, UPS filed this lawsuit.  The Hagans interposed Counterclaims

alleging the following causes of action: (1) breach of contract; (2) fraud; (3) breach of the duty of

good faith and fair dealing; (4) violation of the First Amendment; (5) violation of the New York

Franchise Sales Act; (6) violation of the California Franchise Relations Act; (7) violation of

California's unfair competition law with respect to the Hagans as franchisees; (8) violation of

California's unfair competition law with respect to Thomas Hagan personally; (9) violation New

York's consumer protection law; (10) unjust enrichment; and (11) tortious interference with

contract.  At oral argument on this motion, the Hagans withdrew their Sixth and Seventh

Counterclaims under the California Franchise Relations Act and California's Unfair Competition

law, respectively.  (See Oral Arg. Tr. 14:1–5, December 11, 2014, ECF No. 48.)

       In sum, the Hagans characterize themselves as whistleblowers and allege that

UPS unfairly targeted them, imposing a "zero tolerance" compliance policy despite the fact that

other stores were engaged in the same fraudulent sales practices. (See FACC ¶¶ 558, 910, 1024.)

DISCUSSION

I.     Legal Standard

       "A motion to dismiss a counterclaim is evaluated under the same standard as a

motion to dismiss a complaint."  Orientview Technologies LLC v. Seven For All Mankind, LLC,

No. 13 Civ 0538 (PAE), 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013) (citations omitted).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

6

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To determine plausibility, courts follow a "two-pronged approach." Iqbal, 556 U.S. at 679.  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting Iqbal, 556 U.S. at 678).  Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

 A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  "When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d Cir. 2006), aff'd, 552 U.S. 389 (2008).

 UPS urges this Court to consider its standard Franchise Agreement, Contract Carrier Agreement, and non-compete agreement on this motion.[2]  (See Request for Judicial

---

[2] UPS styles its request as one for judicial notice.  But judicial notice is limited to facts "not subject to reasonable dispute" under Federal Rule of Evidence 201.  That would be inappropriate here.  See, e.g., Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) ("[I]t would violate Fed. R. Evid. 201 for the Court to take judicial notice of the contents of the General Release.").

Notice (ECF No. 43).)  The Hagans did not attach any of these agreements to their counterclaims.  Ordinarily, a court would consider such agreements because they are integral to the counterclaims.  However, the Hagans challenge the authenticity of those agreements, invoking forgery and other flaws in the agreements.  (See Hagans Opp. 6 n.3.)  That challenge precludes this Court from considering the agreements on this motion.  The Second Circuit instructs that "[e]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)) (emphasis added).  "The 'no dispute' requirement has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible."  Fine v. ESPN, Inc., No. 5:12-cv-0836 (LEK), 2014 WL 1312261 (N.D.N.Y. Mar. 31, 2014) (collecting cases); see, e.g., Barberan v. Nationpoint, 706 F. Supp. 2d 408, 415–16 & n.4 (S.D.N.Y. 2010) (refusing to consider documents even though plaintiff's authenticity objections were "less than genuine" and of "questionable viability"); Cram v. Pepsico Exec. Income Deferral Comp. Program, No. 08cv10627 (CS), 2010 WL 4877275, at *4 (S.D.N.Y. Aug. 9, 2010) (refusing to consider document attached to complaint, even though complaint alleged that document was authentic, where plaintiff subsequently "seemingly dispute[d] the authenticity" of his exhibit).  While the Hagans' objections are dubious,[3] this Court will only consider the agreements to the extent their terms are alleged specifically in the Hagans' counterclaims.

---

[3] For example, the Hagans assert the first sample Franchise Agreement is not sufficiently reliable because in part it is countersigned by "Mailboxes Etc., Inc." (Hagans Opp. 6 n.3.)  Yet, the Hagans' own pleading alleges that they entered a Franchise Agreement for this same store location with "TUPSS predecessor-in-interest, MBE [Mailboxes Etc.]" (FACC ¶¶ 408-10).

II.     Contract Counterclaims

    a.   Choice of Law

        A federal court sitting in diversity jurisdiction applies the choice of law rules of

the forum state.  Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433

(2d Cir. 2012).  Here, the court applies New York choice-of-law principles.  And "as a general

rule, [contractual] choice of law provisions are valid and enforceable in New York."  Terwilliger

v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000).

        UPS contends that California law applies to the Hagans' contract claims because

the Franchise Agreements, which incorporate the Carrier Agreements (see FACC ¶ 226), contain

California choice of law provisions.  Although the Hagans do not dispute that the agreements

contain a California choice of law provision, they argue that this Court should apply New York

law because it may not consider those documents.  (Hagans Opp. 8.)  But the Hagans overlook

allegations in their own pleading that a valid California choice of law provision governs the

franchise agreement.  (FACC ¶¶ 976, 985, 989.)[4]  Accordingly, this Court applies California law.

    b.   Breach of Contract

        Under California law, a party must allege the existence of a contract, performance

by one party, breach of the contract by another party, and damages.  See Abdelhamid v. Fire Ins.

Exch., 106 Cal. Rptr. 3d 26, 32–33 (Ct. App. 2010).

        The Hagans' contract counterclaims assert, among other things, that UPS

wrongfully terminated the franchise agreements, and that the terms of those agreements were not

---

[4] See FACC ¶ 976 ("Pursuant to the choice of law expressly stated in the Franchise Agreements, . . . all of the Counter-Defendants are subject to the provisions of the California Franchise Relations Act ["CFRA"]"); FACC ¶ 985(h) (alleging Counter-Defendants violated the CFRA by "[u]nfairly attempting to invoke New York law to enforce the post-term non-competition covenants, which are unenforceable under Calif. Bus. & Prof. Code § 16600, while mandating that California law apply to the balance of the franchise relationship"); FACC ¶ 989 ("The Hagans seek declaratory and injunctive relief declaring that the Franchise Agreements and Contract Carrier Agreements executed by TUPSS franchisees are null and void under California law. . . .").

9

commercially viable.  (FACC ¶¶ 905–11.)  Among other documents, the Hagans rely on the UPS Code of Business Conduct ("Code").  (FACC ¶¶ 907).  But the Code is not a contract, it is a policy statement.  To the extent the Hagans rely on the Code to create enforceable obligations, their counterclaims are dismissed.

With respect to alleged breaches of the Franchise Agreements, the Hagans fail to plead their own performance.  Nor do they point to a single contractual provision that was breached.[5]  Even where the Hagans identify a specific paragraph of the Franchise Agreement, they fail to allege its substance.  Each of these failures is fatal to their claim.  See, e.g., McKell v. Washington Mut. Inc., 49 Cal. Rptr.3d 227 (Ct. App. 2006) ("A written contract may be pleaded either by its terms—set out verbatim in the complaint or . . . attached to the complaint . . . —or by its legal effect.  In order to plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms." (citations and internal quotations omitted)).[6]  Therefore, the First Counterclaim for breach of contract is dismissed.

    c.   Breach of the Covenant of Good Faith and Fair Dealing

Under California law, "[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."  Jenkins v. JP Morgan Chase Bank, N.A., 156 Cal. Rptr. 3d 912, 935 (Ct. App. 2013), as modified (June 12, 2013) (citations omitted).  "[T]his fundamental covenant prevents the contracting parties from taking actions that will deprive another party of the benefits of the

---

[5] For example, the Hagans allege UPS wrongfully terminated the Franchise Agreements "in bad faith, without proper cause, notice and opportunity to cure."  (FACC ¶ 908.)  Yet they do not identify what termination provisions, if any, existed under the agreement.  Indeed, the Hagans allege elsewhere in their counterclaim that "TUPSS/UPS retains the ultimate power to terminate franchisees at will."  (FACC ¶ 31).  And they admit that all their "11 store centers have been shut following receipt of termination notices and cease and desist letters." (FACC ¶ 529.)

[6] This counterclaim would fail under New York law for the same reason.  See Woodhill Elec. v. Jeffrey Beamish, Inc., 904 N.Y.S.2d 232 (App. Div. 2010) ("In order to adequately plead a cause of action for breach of contract . . . the complaint must allege the provisions of the contract that were actually breached.").

agreement. The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes." Jenkins, 156 Cal. Rptr. 3d at 935. But, "even after you have signed a contract, you are not obliged to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain." Market Street Assocs. Ltd. P'ship v. Frey, 941 F.2d 588, 594 (7th Cir. 1991) (Posner, J.).

The Hagans allege various ways UPS mistreated or neglected them as franchisees, but fail to adequately plead contractual obligations that would support their claim. Cf. Jenkins, 156 Cal. Rptr. 3d at 937-38 (affirming dismissal where plaintiff broadly asserted the existence of a "contractual duty" but "fail[ed] to point to any provision . . . in which such a duty is expressly set forth or from which we can reasonably infer such a contractual duty exists"). In the absence of the Franchise Agreements or allegations of their substantive terms, this Court dismisses the Third Counterclaim.[7]

III.     Tort Counterclaims

   a.     Fraud

Under New York law,[8] to state a claim for fraud a plaintiff must demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). Claims for fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that the claimant "specify

---

[7] This counterclaim would fail under New York law for the same reason. See Trump on the Ocean, LLC v. State of New York, 79 A.D.3d 1325, 1326 (N.Y. 2010) (noting that the covenant of good faith and fair dealing is only "in aid and in furtherance of other terms of the agreements of the parties" and dismissing complaint where "a claimant has not shown any specific provision of the [contract] that was allegedly breached").

[8] Both parties rely on New York law for the tort claims, and this Court will do the same. See Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law.").

the statements that the [claimant] contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  The counterclaims allege almost none of these specifics.

The fraud counterclaims rest on the mistaken notion that the Hagans were tricked into performing contractual obligations they previously agreed to—namely, to comply with UPS pricing policies.  (See generally FACC ¶¶ 912-28.)  The Hagans' counterclaim falls short of pleading with particularity any actionable statements or facts suggesting the speaker(s) knew them to be false.  For example, the Hagans rely on a UPS executive's statement following the California meeting that he "believe[d]" UPS and the Hagans had reached "common ground to improve the value of our network collectively."  (See FACC ¶ 539.)  The Hagans claim this was "disingenuous" because UPS proceeded to terminate the Hagans' franchise agreements.  (FACC ¶¶ 917, 922-23.).  The executive's vague statement is insufficient.  Cf. Int'l Oil Field Supply Servs. Corp. v. Fadeyi, 825 N.Y.S.2d 730, 734 (App. Div. 2006) ("Vague expressions of hope and future expectation provide an insufficient basis upon which to predicate a claim of fraud."). The Second Counterclaim is dismissed.

b.  Tortious Interference with Contract

To state a claim for tortious interference with contract, a plaintiff must allege: (1) "the existence of a valid contract between the plaintiff and a third party," (2) "defendant's knowledge of the contract," (3) "defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible," (4) "an actual breach" of the contract, and (5) "damages to the plaintiff."  Ace Arts, LLC v. Sony/ATV Music Pub., LLC, No. 13-CV-7307 (AJN), 2014 WL 4804465, at *9 (S.D.N.Y. Sept. 26, 2014) (citations omitted).

The Hagans' counterclaim refers to "contracts with various third parties"—only two of which are actually identified—including "Bancorp/SBA," John Penrose, eleven unnamed "owners/landlords," unidentified "mailbox customers" and "various vendors." (FACC ¶ 1030.) These cursory allegations and conclusions that UPS's "malicious" conduct caused lenders to decline further extensions of credit or landlords to initiate eviction proceedings, (see FACC ¶¶ 1034-51), are insufficient to state a claim.  See, e.g., In Touch Concepts, Inc. v. Cellco P'ship, 949 F. Supp. 2d 447, 475 (S.D.N.Y. 2013) (complaint fails to state tortious interference claim where it refers generally to "subagents" who contracted with plaintiff but fails to specify which ones were targeted by defendant's inducement); Plasticware, LLC v. Flint Hills Res., LP, 852 F.Supp.2d 398, 404 (S.D.N.Y. 2012) (merely alleging "agreements" with plaintiff's customers is insufficient to state a claim).  Therefore, the Eleventh Counterclaim is dismissed.

IV.    First Amendment

While UPS contracts with the United States Government through the United States Postal Service, and UPS is regulated by the Federal Trade Commission (FACC ¶¶ 943–46), "conduct by a private entity is not fairly attributable to the state merely because the private entity is a business subject to extensive state regulation or 'affected with the public interest." Cooper v. United States Postal Serv., 577 F.3d 479, 491–92 (2d Cir. 2009); see also Loce v. Time Warner Entertainment, 191 F.3d 256, 266 (2d Cir. 1999).  Accordingly, the Fourth Counterclaim is dismissed.

V.    New York Franchise Sales Act

The New York Franchise Sales Act ("NYFSA") regulates the registration of franchises and enumerates requirements for companies establishing, advertising, and selling franchises.  N.Y. Gen. Bus. Law § 680 (McKinney 2015).  The Hagans assert claims under

NYFSA on two principal bases.

First, NYFSA makes it unlawful to "require a franchisee to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by this article." N.Y. Gen. Bus. Law. § 687(5). The Hagans allege that the general release included in their Franchise Agreement (which their counterclaim quotes verbatim) violates NYSFA. (FACC ¶ 971.) Even if that is true, NYFSA merely operates to void any such release, not create an independent cause of action. See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc., 618 N.Y.S.2d 155, 159 (Sup. Ct. 1994), aff'd, 625 N.Y.S.2d 904 (App. Div. 1995).

Second, NYFSA imposes liability on any person who engages in certain enumerated fraudulent or unethical conduct "in connection with the offer, sale, or purchase" of any franchise. N.Y. Gen. Bus. Law § 687(2). Consistent with the statute's purpose of protecting prospective franchisees, the fraudulent conduct prohibited by NYSFA does not "cover problems or disputes that can develop during the course of the franchise relationship." LaGuardia Associates v. Holiday Hospital Franchising, Inc., 92 F. Supp. 2d 119, 126 (E.D.N.Y. 2000); cf. Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 103 (2d Cir. 2014) (the "act or transaction constituting the violation" of section 687(2) for committing fraud in connection with the sale of franchises, occurred "when the franchises were purchased"). To the extent the Hagans bring an NYFSA claim based on fraudulent conduct, (see FACC ¶ 973), they fail to allege this in connection with an "offer or sale" of their franchise. Therefore, the Fifth Counterclaim is dismissed.

## VI.   California Unfair Competition Law

The Hagans assert a counterclaim under California's unfair competition law ("UCL"), which prohibits unfair or fraudulent business practices.  Cal. Bus. & Prof. Code § 17200 et seq.  To state a claim under the UCL based on misrepresentation, the plaintiff must allege "actual reliance on the allegedly deceptive or misleading statements."  Kwikset Corp. v. Superior Court, 246 P.3d 877, 888 (Cal. 2011).  "It follows that a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made."  Kwikset Corp., 246 P.3d at 888 n.10 (citing Buckland v. Threshold Enterprises, Ltd., 66 Cal. Rptr. 3d 543, 549 (Ct. App. 2007), disapproved of on other grounds by Kwikset Corp. v. Superior Court, 246 P.3d 877 (Cal. 2011)); see, e.g., Buckland, 66 Cal. Rptr. 3d at 549-50 (concluding party who bought product suspecting it was mislabeled in order to pursue a UCL fraud action had not established standing).

The UCL counterclaim alleges that, in February 2014, a sales associate at a UPS Store in California overcharged Thomas Hagan for a shipment by overstating package dimensions and misrepresenting available shipping options.  (FACC ¶¶ 995–96.)  However egregious that practice, Hagan entered the transaction as part of his own price policing efforts and did not rely on any deception.  (FACC ¶¶ 996, 999.)[9]  Thus, the UCL provides no recourse.  Therefore, the Eighth Counterclaim is dismissed.

## VII.   Unjust Enrichment

An unjust enrichment claim "lies only where the defendant possesses money or received a benefit which in equity and good conscience the defendant should not retain because

---

[9] Notably, UPS had terminated the Hagans' as franchisees one day prior to Thomas Hagan's purchase in the California store.  (FACC ¶¶ 552, 995.)  Thus, unlike their claim under New York's consumer protection statute, the Hagans only allege direct injury to Thomas Hagan personally.  (FACC ¶ 1001.)

it belongs to the plaintiff." Martes v. USLIFE Corp., 927 F. Supp. 146, 149 (S.D.N.Y. 1996) (citation omitted); see also Roistacher v. Bondi, 998 F. Supp. 2d 115, 123 (S.D.N.Y. 2014) (unjust enrichment claim fails where plaintiff had no "possessory interest" in claimed funds). Here, the Hagans' counterclaim rests on a theory that UPS and the Franchisees continue to receive overcharges from Manhattan customers and "overflow business" stemming from the closure of the Hagans' stores.  (FACC ¶¶ 1021–23.)  But they do not allege any facts suggesting a possessory interest in any of those benefits.  And to the extent their claim relies on obligations created by the Franchise Agreements with UPS, it is barred because "a valid and enforceable contract precludes quasi-contractual recovery in New York." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc., No. 11 Civ. 4509 (RJS), 2013 WL 1385210, at *3-4 (S.D.N.Y. Mar. 18, 2013) (citation omitted).  Therefore, the Tenth Counterclaim is dismissed.

VIII.   New York Consumer Protection Law

"The New York General Business Law makes it unlawful to engage in '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state.'" Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (alteration in original) (quoting N.Y. Gen. Bus. Law § 349(a)). Section 349 creates a private right of action which provides:

> [A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. . . .

N.Y. Gen. Bus. Law § 349(h).[10]

---

[10] The Hagans also refer to New York General Business Law § 350, which prohibits false advertising.  But the Hagans do not sufficiently allege reliance on an advertisement to support such a claim, see Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 & n.4 (2d Cir. 2005), and it is therefore dismissed.

A.  Competitor Standing

First, this Court must determine at the outset whether the Hagans have standing to bring this claim.  "Although the statute is, at its core, a consumer protection device, corporate competitors [] have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue."  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (citations omitted).  "The gravamen of the complaint must be consumer injury or harm to the public interest."  Securitron, 65 F.3d at 264 (citation omitted).  "The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."  Securitron, 65 F.3d at 264.

The Court of Appeals has recognized that "section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language."  Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 818 N.E.2d 1140, 1144 (N.Y. 2004).  And, as the Appellate Division recently explained, "[s]o long as the allegedly deceptive conduct is sufficiently consumer-oriented, a business competitor protecting its own interest will ultimately serve to protect the interests of the consuming public."  N. State Autobahn, Inc. v. Progressive Ins. Grp. Co., 953 N.Y.S.2d 96, 106 (App. Div. 2012).

Here, the core of the claim is harm to consumers, even if that is not what concerns the Hagans the most.  The Counter-Defendants' argument that the Hagans do not have standing because they primarily seek business-related damages, conflates the public harm requirement with that of injury.

B.  Sufficiency of Allegations

"[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of

17

Rule 8(a)." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (internal citations omitted). A claim under GBL § 349 contains three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (quoting Stutman v. Chemical Bank, 731 N.E.2d 608 (N.Y. 2000)).

The statute does not require that a defendant intended to defraud or mislead. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995) [hereinafter "Oswego Laborers"]. Nor does it require proof of justifiable reliance. Oswego Laborers, 647 N.E.2d at 745; see also Pelman, 396 F.3d at 511. The statute "declares deceptive conduct unlawful without reference to whether it has actually caused specific pecuniary harm to consumers in general." N. State Autobahn, 953 N.Y.S.2d at 102. And it applies to "cases where the deception pertains to an issue that may bear on a consumer's decision to participate in a particular transaction." N. State Autobahn, 953 N.Y.S.2d at 102. In that sense, "the deception itself is the harm that the statute seeks to remedy: 'Consumers have the right to an honest market place.'" N. State Autobahn, 953 N.Y.S.2d at 102 (quoting Mem. of Governor Rockefeller, 1970 NY Legis. Ann. at 472).

1. Consumer Oriented Conduct

"The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." Wilson v. Northwestern Mutual Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010); Oswego Laborers, 85 N.Y.2d at 26-27. The alleged practices resulting in the "overcharging" of customers at nearly every UPS Store in Manhattan is plainly consumer-oriented.

2.  Deceptive Acts or Practices

"Deceptive practices are acts which are dishonest or misleading in a material respect.  Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  Here, the Hagans have alleged that UPS and the Franchisees are engaged in practices aimed at inflating the price of shipments, including altering the weight or dimensions of packages, or misrepresenting the availability of "guaranteed" shipment options.  (See, e.g., FACC ¶¶ 559-60, 564).  Customers ultimately pay an inflated price for the same service they would have received—e.g., a guaranteed shipment on a particular date—had they not been deceived.  (See, e.g., FACC ¶ 28 ("If the weight and dimensions of a package are purposefully increased, the billable rate can be artificially manipulated upward").)  Such practices are the kind prohibited by Section 349 because they serve to "undermine a consumer's ability to evaluate his or her market options and to make a free and intelligent choice."  N. State Autobahn, 953 N.Y.S.2d at 102.  Therefore, this Court finds the Hagans adequately plead that the Counter-Defendants engaged in deceptive acts or practices.

3.  Injury

A pleading must allege plaintiff has "suffered actual injury caused by a materially misleading or deceptive act or practice."  City of New York v. Smokes-Spirits Com, Inc., 911 N.E.2d 834, 839 (N.Y. 2009) (citations omitted).  The "injury" to the Hagans is their allegation that they lost business as a result of the continued deceptive practices of their peer franchisees. Cf. N. State Autobahn, 953 N.Y.S.2d at 102 (allowing claim to proceed where plaintiff repair shop alleged insurance company's deception of prospective customers diverted them to competing businesses and resulted in lost business to plaintiff).  Specifically, they allege

customers stopped using UPS altogether when they were offered conflicting information about which UPS services were "guaranteed" at different stores.  (FACC ¶ 561; see also ¶ 23.)  This is sufficient to plead injury.  Accordingly, the Hagans adequately plead a Section 349 claim against UPS and the Franchisees.

It should be noted that the Hagans' counterclaim asserts UPS is culpable on an "aiding and abetting" theory.  (See, e.g., FACC ¶ 1009.)  UPS retorts that the statute does not contemplate liability on that basis.  (Counter-Def. Mem. 20-21.)  The Hagans allege that UPS employs a laser measurement system that discerns the actual weight and dimensions of packages.  (FACC ¶ 8.)  UPS allegedly detects and tracks overcharges based on discrepancies in weight or dimensions (FACC ¶ 28), but the overcharges stay within the UPS network—either retained by UPS or the franchisee—and are generally not refunded to customers.  (FACC ¶¶ 300-02, 330-31, 336-37.)  This Court finds it unnecessary to consider whether the statute provides recourse against aiders and abettors when it broadly declares unlawful: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."  N.Y. Gen. Bus. Law § 349.

IX.   Motion to Strike

UPS and the Franchisees move to strike the vast majority of the Hagans' pleading by excising "redundant, immaterial, [or] impertinent" material under Federal Rule of Civil Procedure 12(f).  The Second Circuit has observed that "courts should not tamper with the pleadings unless there is a strong reason for so doing," Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976), and has emphasized that Rule 12(f) is "designed for excision of material from a pleading, not for dismissal of claims in their entirety," Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (citation omitted).  "[S]triking a portion of a pleading is a drastic

remedy and is therefore disfavored." <u>VNB Realty, Inc. v. Bank of Am. Corp.</u>, No. 11 Civ. 6805 (DLC), 2013 WL 5179197, at *2 (S.D.N.Y. Sept. 16, 2013) (citation omitted). As noted, there are compelling reasons for reducing the pleadings in this case to intelligible proportions. To that end, UPS is directed to file an amended complaint consistent with the strictures of Rule 8 by April 15, 2015. And the Hagans are directed to file an Answer and single counterclaim to the Amended Complaint by April 29, 2015.

At the last pre-motion conference, this Court made clear to the Hagans that leave to replead would not be granted with respect to any counterclaims that were dismissed. (<u>See</u> Conf. Tr. 8, Sept. 5, 2014, ECF No. 38.) The Hagans had ample time to consider this Court's admonition. Accordingly, all of the Hagans counterclaims, except the Ninth Counterclaim under New York General Business Law § 349, are dismissed without leave to replead.

CONCLUSION

For the foregoing reasons, UPS and the Franchisees' motion to dismiss the Hagans' counterclaims is granted in part and denied in part. All of the Hagans' counterclaims are dismissed, without leave to replead, except for the Ninth Counterclaim under New York General Business Law § 349. UPS and the Franchisees' motion to strike and request for judicial notice are denied.

UPS is directed to file an amended complaint, stripped of its surplusage and exhibits, that conforms to Federal Rule of Civil Procedure 8 by April 15, 2015. And the Hagans are directed to interpose an Answer to the Amended Complaint and a single counterclaim under New York General Business Law § 349 by April 29, 2015. The Hagans' amended pleading should conform to Rule 8 and be stripped of surplusage and exhibits. Failure to comply may result in sanctions.

The Clerk of the Court is directed to terminate the motion pending at ECF No. 41.

Dated: March 24, 2015
      New York, New York

                              SO ORDERED:

                              WILLIAM H. PAULEY III
                                   U.S.D.J.

*All Counsel of Record via ECF.*