MORRISON | FOERSTER

707 WILSHIRE BOULEVARD
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

May 4, 2015

Writer's Direct Contact
+1 (213) 892.5810
MMcDonald@mofo.com

The Honorable William Pauley III
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Chambers 1920
New York, NY 10007

Re:     *The UPS Store, Inc., et al. v. Robert Hagan, et al.* (Case No. 14-CV-1210 (WHP))

Dear Judge Pauley:

Pursuant to Your Honor's Individual Practices, Rule 3(A), counsel for
Plaintiffs/Counterclaim Defendants United Parcel Service, Inc., United Parcel Service of
America, Inc., and The UPS Store, Inc. ("TUPSS") (collectively, "the UPS Parties") and for
Third Party Counterclaim Defendants ("Franchisees") jointly write to request a pre-motion
conference concerning a motion to dismiss the sole remaining counterclaim against them.[1]

TUPSS initiated this action to obtain compliance with Defendants' obligations after TUPSS
terminated their The UPS Store franchisee agreements due to material breaches.  Defendants
filed multiple counterclaims and amended counterclaims, which the Court dismissed, without
leave to replead, except for a claim under New York General Business Law Section 349.
(Mem. & Order, March 24, 2015, ECF No. 57.)  Defendants filed a Second Amended
Counterclaim ("SACC") and Third-Party Complaint on April 29, 2015.

The Second Amended Counterclaim ("SACC") again asserts a Section 349 claim against the
UPS Parties on an aiding and abetting theory, alleging that they "aided and abetted the Third-
Party Defendants . . . in furtherance of a scheme to defraud and overcharge customers."
(SACC ¶ 148.)  The SACC adds that the UPS Parties themselves (in addition to the
Franchisees) "committed fraudulent, unfair, and/or deceptive practices," including through
"their intentional over-dimensioning of packages and misrepresentations of the UPS Ground
guarantee."  (*Id.* ¶ 147.)

The SACC fails to state a claim against the UPS Parties or the Franchisees as a matter of law

---

[1] Defendants' counsel have submitted a letter requesting leave to file a third amended
counterclaim to assert a new counterclaim.  Defendants' letter does not seek a pre-motion
conference in advance of filing a motion for leave to file a third amended counterclaim.  The
UPS Parties and Franchisees will not respond to the letter unless authorized and requested to
do so by the Court.

la-1281753

MORRISON | FOERSTER

The Honorable William Pauley III
May 4, 2015
Page Two

because it is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), which bars the enforcement of any state law "related to a price, route, or service" of carriers that transport property. 49 U.S.C. §§ 14501(c)(1), 41713(b)(4)(A). The SACC falls squarely within the FAAAA's broad preemptive scope.

***The Claim Requires Enforcement of State Law.*** A claim under New York General Business Law Section 349 plainly requires the enforcement of state law within the meaning of the FAAAA. The Supreme Court has held claims under state fraudulent and deceptive trade practices statutes preempted under the virtually-identical preemption provision of the Airline Deregulation Act ("ADA"). *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 226-28 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). These holdings apply equally to the FAAAA's preemption provisions, which are interpreted alike with the ADA. *See Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364, 371 (2008) (applying broad preemption interpretation of *Morales* to FAAAA).

***The Claim Is Related To UPS's Prices and Services.*** In *Morales*, the Supreme Court reasoned that the term "relating to" "express[es] a broad pre-emptive purpose" that encompasses any state law that "has a connection with or reference to" a carrier's rate, route, or service. 504 U.S. at 383-84 (internal quotation marks and citation omitted). The Court then held that the ADA preempted application of state consumer protection laws to enforce airline advertising guidelines, both because the guidelines had an "express reference to fares" and also because a restriction on fare advertising necessarily would have a "forbidden significant effect upon fares." *Id.* at 388.

Here, the SACC is based expressly and directly on prices that customers pay for UPS service and seeks to hold the UPS Parties and Franchisees liable for the prices and services that UPS offers through TUPSS franchisees; it thus meets both of the alternative *Morales* tests for "related to" price and service. The SACC is replete with references to UPS's prices and services. It is based on an alleged "scheme to defraud and overcharge customers" for UPS shipments (SACC ¶ 148), which includes, among other things: charging customers for more expensive "UPS Air service" and fuel surcharges when "those packages were shipped to their destinations in the same trucks used for packages that are shipped via UPS Ground" (*id.* ¶¶ 131-32); "misrepresenting the UPS Ground guarantee" in order to "upsell customers to UPS Air" (*id.* ¶ 109); "fraudulently modifying the size and/or weight of customer packages in order to overcharge those customers" (*id.* ¶ 132); and "artificially inflating shipping rates" (*id.* ¶ 134). The SACC also alleges that "many packages shipped via [UPS Air service levels] never actually travel on an aircraft or even along routes where air service exists" (*id.* ¶ 86), which allegedly results in UPS's providing "illusory[] 'UPS Air' services" (*id.* ¶ 2).

The SACC also would have a significant effect on UPS's prices and services, both because it seeks statutory penalties and treble damages for the alleged pricing and service practices and also because it seeks to enjoin the alleged "misconduct." (*Id.* ¶ 153.) Defendants would

la-1281753

MORRISON | FOERSTER

The Honorable William Pauley III
May 4, 2015
Page Three

thereby have the Court order, for example, what prices could be collected for UPS's services sold through TUPSS franchises, what UPS service offerings must be offered to franchise customers and how those services must be described; and the mode of transportation UPS must provide and the fuel surcharges that UPS could charge for "Air" services traveling on certain routes.

Numerous cases support that the SACC relates to price and service under the FAAAA. *See, e.g., Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849 (8th Cir. 2009) (challenge to UPS re-billing charge related to UPS's price and service); *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2009 U.S. Dist. LEXIS 26058 at *2, *12 (S.D. Ohio Mar. 16, 2009) (claims that DHL "inappropriately charged" plaintiffs for shipments processed on DHL's website but not tendered for shipping related to DHL's price and service); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, (N.D. Ga. 1997) (claims that UPS "inappropriately charged Plaintiff *prices* based on the 'dimensional weight' of various packages . . . relate to prices charged by [UPS] for various services").

The FAAAA preemption defense applies equally to the counterclaim against the Franchisees. The Supreme Court made clear in *Rowe* that a law does not have to directly regulate a carrier to be preempted, holding that the FAAAA preempted a state law that prohibited tobacco retailers from using a delivery service that did not follow specified delivery procedures. If the FAAAA applied only when laws were enforced against carriers, the law regulating tobacco retailers could not have been held preempted. Similarly, courts have applied preemption to protect non-carriers from liability under state law claims that "relate to" a price, route, or service of a carrier, regardless of whether a claim is brought against a carrier. *See, e.g., Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 287 n.8 (5th Cir. 2002) (ADA preempted claims against a company that contracted with travel agents for use of an airline's computer reservations service).

Because the SACC invokes state consumer law to hold the UPS Parties and Franchisees liable for alleged "overcharges" paid by customers for UPS services and for alleged improper service practices, it is preempted by the FAAAA as a matter of law and should be dismissed.

Respectfully submitted,

Mark R. McDonald
Counsel for the UPS Parties

Leonard Rodes / MKM

Leonard Rodes
Counsel for the Franchisees

cc:    Counsel of Record

la-1281753