# EXHIBIT 12



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day Air**

February 5, 2014

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
The UPS Store Center No. 0523
1202 Lexington Avenue
New York, NY 10028-1425

**Re:** **Notice of Material Default and Termination:  Franchise Agreement for The UPS Store® Center No. 0523 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Ridge Assets, Inc. that (1) you are in material breach of the franchise agreement for the Center dated March 31, 2010 (the "Franchise Agreement"); and (2) **the Franchise Agreement is terminated effective immediately, without any further notice or action from TUPSS and without an opportunity to cure.**

As you are aware, Section 12.5 of the Franchise Agreement states: *"if Franchisee's UPS Incentive Program Contract Carrier Agreement is terminated by [TUPSS's] Affiliate due to Franchisee's failure to cure any material default of that Carrier Agreement, that termination will be considered a simultaneous uncured and incurable material default under this Agreement and will automatically and simultaneously result in the immediate termination of this Agreement without any required notice or action by [TUPSS]."* On February 5, 2014, United Parcel Service, Inc. ("UPS") terminated the UPS Store Franchisee UPS Incentive Program Contract Carrier Agreement for the Center ("Contract Carrier Agreement") due to your material breach thereof as a result of your failure to make timely payment of UPS shipping charges owed to UPS.

Additionally, Section 12.4(a) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . Franchisee . . . fails to meet its financial obligations as they become due."* Your failure to timely pay shipping charges owed to UPS constitutes a material default under Section 12.4(a) of the Franchise Agreement.

The UPS Store

UPS_0001318

Further, your failure to offer UPS shipping services at the Center is a material breach of sections 7.1 and 7.2 of the Franchise Agreement, which requires you to operate the Center in compliance with TUPSS' System, Standards and Specifications, and Operations Manual.

Reference is also made to TUPSS' January 17, 2014 Notice of Material Default, a copy of which is enclosed herewith. The January 17, 2014 Notice of Material Default was issued as a result of your: (a) failure to keep the Center open and operating on January 15, 2014 in material breach of numerous provisions of the Franchise Agreement and Operations Manual; (b) use of unauthorized signage in material breach of TUPSS' center image specifications and Section 7 of the Franchise Agreement; and (c) deliberate conduct in displaying near the front door of the closed Center (and ten other centers in the Manhattan area) a copy of a summons in a lawsuit between you and your Area Franchise, conduct which reflects poorly upon the reputation of the Center and the TUPSS franchise network in material breach of Section 12.4(k) of the Franchise Agreement. That section states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS's] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS's] network of Centers generally . . . ."* Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting TUPSS to terminate your Franchise Agreement for the Center.

Further, reference is made to TUPSS's December 12, 2013 Notice of Material Default, a copy of which is enclosed herewith. The December 12, 2013 Notice of Material Default was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers in material breach of numerous provisions of the Franchise Agreement and the Contract Carrier Agreement. As you know, Section 12.4(h) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee receives 3 or more written notices of default from [TUPSS], within any period of 12 consecutive months, concerning any material breach by Franchisee, whether or not such breaches shall have been curable or cured after receipt of notice. Such repeated course of conduct itself shall be considered incurable and be grounds for termination of this Agreement at the same time as, or any time after, [TUPSS] notifies Franchisee of the third material default."* As set forth above, the instant Notice of Material Default and Termination constitutes the third written notice of default for the Center within the prior 12 months.

Accordingly, for all of the foregoing reasons, **TUPSS hereby confirms the termination of the Franchise Agreement immediately.**

2

UPS_0001319

Given the termination of the Franchise Agreement, the post-termination requirements of the Franchise Agreement now apply, including, but not limited to, the non-competition and non-solicitation covenants and your duty to pay all outstanding amounts owed to TUPSS and UPS, including but not limited to payment of the outstanding shipping charges owed to UPS. TUPSS will monitor the Center to confirm your compliance with your post-termination obligations. To assist you in completing the post-termination requirements, a de-identification checklist is enclosed with this letter. Also, please be advised that should TUPSS be required to take legal action to collect any outstanding amounts, obtain de-identification, or enforce any of the post-termination provisions of the Franchise Agreement, TUPSS will seek reimbursement of its attorneys' fees and costs incurred in such efforts.

TUPSS reserves all of its rights and remedies under the Franchise Agreement and related documents, under all applicable law and in equity.

Sincerely,

Don Higginson

Enclosures

cc:     United Parcel Service, Inc.
        Peter M. Ellis

3

UPS_0001320



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day**

January 17, 2014

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
The UPS Store Center No. 0523
1202 Lexington Avenue
New York, NY 10028-1425

Re:     Notice of Material Default:  The UPS Store Center No. 0523 (the "Center")

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Ridge Assets, Inc. that **you are in material breach of the franchise agreement for the Center dated March 31, 2010** (the "Franchise Agreement") as a result of (a) failing to keep the Center open and operating on January 15, 2014, and (b) your conduct which impairs the goodwill associated with TUPSS' trademarks and which reflects materially and unfavorably upon the operation and reputation of the Center as well as the TUPSS franchise network.  Furthermore, as detailed below, **you must immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with The UPS Store, Inc. Center Operations Manual** (the "Operations Manual").

As you are aware, Section 7.1(a) of the Franchise Agreement states:  *"Franchisee shall adhere to the System developed by [TUPSS] for the operation of the Center, including the system for postal, packaging, shipping, business and communication retail service centers under the Marks, as provided herein and in the Manuals."*  Section 7.1(b) of the Franchise Agreement states:  *"Franchisee shall operate the Center in compliance with [TUPSS'] then-current Standards and Specifications for external/internal center image specifications."*  As you are also aware, Section 7.2 of the Franchise Agreement states:  *"Franchisee shall strictly adhere to the Standards and Specifications set forth in the Manuals."*

Further, the Operations Manual provides that *"Each Franchisee is required to comply with current operating hours standards unless otherwise specified in his or her Franchise Agreement,"* and that *"TUPSS requires all Centers to be open for business during the same hours of the day Monday through Friday."*

**The UPS Store**

UPS_0001321

Additionally, Section 12.4(k) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS'] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS] network of Centers generally . . . ."*

TUPSS has learned that on Wednesday, January 15, 2014, you, without prior authorization, closed, during normal business hours, not just the Center, but all 11 of the centers under Messr. Hagans' control (representing approximately one fifth of all TUPSS centers in Manhattan). Moreover, near the front door of each center you prominently displayed a copy of the summons from a recent lawsuit you initiated against your Area Franchise. You also posted a sign on the front door of the centers that stated that "our store is closed" and directed customers needing assistance to call United Parcel Service's customer service number, (800) 742-5877. Your failure to comply with the Operating Hours requirements in the Operations Manual constitutes a material violation of the Operating Standards and Specifications provision of Sections 7.1(a) and 7.2 of the Franchise Agreement. Your use of unauthorized signage also violated TUPSS' center image specifications and as such also violates 7.1(b) of the Franchise Agreement.

Additionally, you have engaged in conduct that reflects poorly upon the reputation of the Center and the TUPSS franchise network. For example, among other things, your deliberate failure to keep the centers open and operating, while instead prominently displaying near the front door a summons in a lawsuit between you and your Area Franchise, reflects poorly upon the reputation of each of the centers and the TUPSS franchise network and has, in fact, damaged the goodwill of the TUPSS trademarks and brand, in violation of Section 12.4(k) of the Franchise Agreement. Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting (but not obligating) TUPSS to terminate your Franchise Agreement for the Center.

**Accordingly, TUPSS hereby notifies you of your material breach of the Franchise Agreement and demands you immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with the Operations Manual.**

2

UPS_0001322

TUPSS reserves all of its rights and remedies under the Franchise Agreement under all applicable law and in equity.

Sincerely,

Don Higginson

3

UPS_0001323



**Leonard E. Hudson**
Direct Phone: +1 312 207 2412
Email: lhudson@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

December 12, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
The UPS Store Center No. 0523, 0561, 1141,
1227, 1382, 6281, 6280, 5308 and 4311
c/o Stephen J. Savva, Esq.
546 5th Ave.
6th Floor
New York, NY 10036

Re:     **Notice of Material Default: The UPS Store Center Nos. 0523, 0561, 1141, 1227,**
          **1382, 4311, 5308, 6280, and 6281 (The "Centers")**

Dear Messrs. Hagan:

Reed Smith LLP represents United Parcel Service, Inc. ("UPS") and The UPS Store, Inc. ("TUPSS") in connection with various matters. Reference is made to the November 6, 2013 Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate correspondence (the "Cease and Desist"). A copy of the Cease and Desist is enclosed herewith. The Cease and Desist was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers. The Cease and Desist advised, among other things, that: (1) TUPSS had obtained credible evidence that the Centers have been systematically overcharging customers on UPS shipments as part of a scheme to increase your profits; (2) your conduct is wholly improper and each potentially fraudulent transaction constituted a material breach of numerous provisions of the written franchise agreements for the Centers (the "Franchise Agreements") as well as the UPS Incentive Program Contract Carrier Agreements (the "Contract Carrier Agreements") for the Centers; and (3) your misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation. The Cease and Desist demanded that you provide an explanation for your misconduct at the meeting with TUPSS representatives then-scheduled for November 12, 2013, in San Diego, California.

On November 12, 2013, you met with TUPSS representatives at TUPSS headquarters in San Diego, California. During that meeting you were advised of, among other things, the following:

1.  As a result of misconduct relating to UPS shipping at the Centers, you would receive the instant Notice of Material Default; and

2.  That TUPSS would require you to, among things, (a) immediately cease and desist all misconduct in connection with the Franchise Agreements, including overcharging for UPS shipping at the Centers; (b) develop and implement an action plan to prevent future violations relating to overcharging for UPS shipping at the Centers; and (c) acknowledge and agree that any future violations of this nature would be

NEW YORK ◆ LONDON ◆ HONG KONG ◆ CHICAGO ◆ WASHINGTON, D.C. ◆ BEIJING ◆ PARIS ◆ LOS ANGELES ◆ SAN FRANCISCO ◆ PHILADELPHIA ◆ SHANGHAI ◆ PITTSBURGH ◆ HOUSTON
SINGAPORE ◆ MUNICH ◆ ABU DHABI ◆ PRINCETON ◆ NORTHERN VIRGINIA ◆ WILMINGTON ◆ SILICON VALLEY ◆ DUBAI ◆ CENTURY CITY ◆ RICHMOND ◆ GREECE ◆ KAZAKHSTAN

US_ACTIVE-115661886.1-LEHUDSON 12/12/2013 3:16 PM

UPS_0001324

taken very seriously, including but limited to the potential termination of the Franchise Agreements for the Centers.

During the November 12 meeting, you questioned the veracity of the allegations regarding UPS shipping overcharging and requested additional information regarding the same. That requested information has been provided. Additionally, during the November 12 meeting and in subsequent email correspondence dated December 6, 2013, you raised extraneous issues other than your Centers' misconduct. While TUPSS acknowledges your comments and concerns as well as your email, TUPSS recommends that you focus your attention exclusively on full and complete compliance with your contractual obligations under the Franchise Agreements and Contract Carrier Agreements for the Centers.

Thus, **TUPSS HEREBY NOTIFIES YOU OF AND CONFIRMS YOUR MATERIAL DEFAULT OF THE FRANCHISE AGREEMENTS FOR THE CENTERS. SIMILARLY, UPS FURTHER NOTIFIES YOU THAT YOUR CONDUCT CONSTITUTES A MATERIAL DEFAULT OF CONTRACT CARRIER AGREEMENTS.**

As you are aware, the Contract Carrier Agreements provide that, in order to receive the incentives or discounts referenced in those agreements, you agreed, among other obligations, not to charge customers more than the maximum UPS retail prices designated by UPS for the various UPS shipping services and options offered by the Centers to customers. The Contract Carrier Agreements further provide that it shall be a material default of the agreements to, among other things, charge customers in excess of UPS's designated maximum retail prices for the various UPS shipping services and options. Additionally, the Contract Carrier Agreements provide that the use of a non-compliant manifest system or incorrect rates will result in a charge of $0.50 per package or $35.00 per week, whichever is greater, and that UPS may terminate the agreements in the event that you use a non-compliant manifest system or incorrect rates and fail to cure such defaults as required.

Moreover, in the Franchise Agreements you agreed to operate the Centers in compliance with TUPSS's Standards and Specifications, which include restrictions on Franchisees' maximum retail prices for various UPS shipping services. Pursuant to the Franchise Agreements, Franchisees may not charge customers more than the maximum retail prices designated by TUPSS's Affiliate for various UPS shipping services offered by the Centers to customers. The Franchise Agreements further provide that you shall be deemed to be in material default and that TUPSS may, at its option, terminate the agreements and all rights thereunder, without affording you any opportunity to cure the default, if you materially impair the goodwill associated with TUPSS's Marks or TUPSS's rights therein, or take any action that reflects materially and unfavorably upon the operation and reputation of the Centers or upon TUPSS's franchise network generally. Additionally, the Franchise Agreements provide that any material default by Franchisees under the terms and conditions of the agreements, or any other agreement between TUPSS (or its Affiliate) and Franchisees shall be deemed to be a material default of each and every said agreement. Thus, a material default pursuant to the Contract Carrier Agreements constitutes a material default under the Franchise Agreements.

In the event the above-referenced misconduct continues at the Centers, TUPSS and UPS may take additional actions to enforce their rights under the Franchise Agreements and Contract Carrier Agreements and to protect the goodwill of the Marks and TUPSS's franchise network, including but not limited to, terminating the Franchise Agreements and Contract Carrier Agreements for each of the Centers. Additionally, in their sole discretion, TUPSS and UPS may:

1. require you to engage, at your expense, a third-party auditor approved by TUPSS and UPS to perform a full accounting of all improper transactions conducted at the Centers;

2. require you to disgorge all ill-gotten gains obtained from your misconduct;

3. to the extent that reimbursement of funds to customers is necessary, require that you engage, at your expense, a third-party administrator approved by TUPSS and UPS to administer such process; and/or

4. require you to indemnify and reimburse TUPSS and UPS for all costs and expenses, including attorneys' fees, incurred as a result of the misconduct.

You are reminded that, in the event that the Franchise Agreements are terminated, all post-termination requirements of the Franchise Agreements will apply, including, but not limited to, the covenant against competition and your duty to pay all outstanding amounts owed to TUPSS and UPS, respectively. Also, please be advised that should TUPSS or UPS be required to take legal action to collect any outstanding amounts or enforce any of the post-term provisions of the Franchise Agreements, TUPSS and UPS will seek reimbursement of their attorneys' fees and costs incurred in such efforts.

TUPSS and UPS reserve all of rights and remedies under the Franchise Agreements, Contract Carrier Agreements (and related agreements), and under all applicable law and in equity.

Please give this matter your immediate attention and direct to my attention all future communications relating to this matter.

Sincerely,

Leonard E. Hudson

Enclosure

cc:     The UPS Store, Inc.
        United Parcel Service, Inc.



**Franchise Services Dept.**

**The UPS Store®**
6060 Cornerstone Court West
San Diego, CA 92121
8584558800 Tel
8585978542 Fax
8883463623 Tel

November 6, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
1202 Lexington Avenue
New York, NY 10028-1425

Robert Hagan
Thomas Hagan
3A Inc.
1636 3rd Avenue
New York, NY 10128-3622

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
331 W. 57th Street
New York, NY 10019-3101

Robert Hagan
Thomas Hagan
Tanmor, Inc.
527 3rd Avenue
New York, NY 10016

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
1562 First Avenue
New York, NY 10028-4004

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
303 Park Avenue South
New York, NY 10010-3657

Robert Hagan
Thomas Hagan
Ridgedown, Inc.
342 Broadway
New York, NY 10013

Robert Hagan
Thomas Hagan
Robpack, LLC
328 8th Avenue
New York, NY 10001-4857

Robert Hagan
Thomas Hagan
Ridge Pen, LLC
1474 3rd Avenue
New York, NY 10028

Robert Hagan
Thomas Hagan
Tompack LLC
222 8th Avenue
New York, NY 10011

Robert Hagan
Thomas Hagan
Bigpack, LLC
694 10th Avenue
New York, NY 10019

**The UPS Store**

UPS_0001327



**Re:** Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate
The UPS Store® Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 5613, 6280, 6281, and 6283 (The "Centers")

Dear Messrs. Hagan:

As franchisees of The UPS Store, Inc. ("TUPSS"), you know the importance of The UPS Store® brand and the associated goodwill. The mission of the TUPSS franchise network is to make business easier and deliver convenient solutions with world-class customer service to our loyal customers. Providing world-class customer service means, among other things, acting with integrity. When TUPSS discovers dishonesty in its network, it must take strong action to protect its brand and reputation.

TUPSS has recently discovered what appears to be a widespread pattern of improper and dishonest conduct at your Centers. Specifically, TUPSS has credible evidence that your Centers have been systematically overcharging customers for UPS shipments as part of a scheme to increase your profits. This conduct is wholly improper and each potentially fraudulent transaction constitutes a material breach of numerous provisions of the Franchise Agreements and the UPS Incentive Program Contract Carrier Agreements for the Centers. Moreover, this misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation.

Accordingly, TUPSS demands that you and the Centers immediately cease and desist charging customers in excess of the maximum UPS Retail rate and comply fully with the TUPSS and UPS operational requirements, including adhering to the strict maximum retail pricing for UPS shipping.

TUPSS and UPS are still investigating this matter to evaluate the full scope and duration of your misconduct and determine an appropriate resolution. In connection with this investigation, TUPSS demands that you provide an explanation for the above-referenced misconduct at the meeting with TUPSS representatives currently scheduled for November 12, 2013 in San Diego, California. Please be advised that TUPSS takes this matter very seriously. In the event TUPSS is not satisfied with your explanation, additional actions may be taken, including but not limited to termination of the Franchise Agreements for the Centers.

The UPS Store

UPS_0001328



TUPSS and its affiliates reserve all of their rights and remedies under the Franchise Agreement and related contracts under all applicable law and in equity.
Please give this matter your immediate attention.

Sincerely,

*Jim Hillquist*
*V.P of Operations*

cc:    United Parcel Service, Inc.

The UPS Store

UPS_0001329

## Franchisee De-identification Checklist:
### Center #

I. Complete and submit this checklist as indicated below.
1. The Franchisee must place an "X" next to the items below when completed.
2. The Franchisee must sign this checklist and give it to the Area Franchisee (or his or her support representative) or, if the Franchisee's Center is located in a TUPSS-owned Area, to a local TUPSS representative for verification and signature.
3. De-identification must take place immediately after franchise termination. The Area Franchisee must submit the completed checklist (along with exterior and interior photographs of the de-identified Center) to the Closure Specialist.

II. In the event of termination and/or expiration of the Franchise Agreement for any reason, you must do the following:

____1. Pay in full any and all monies due TUPSS that accrued through the date of complete de-identification. In other words, if terminated franchisee operates the Center for any period of time after the last date of the franchise agreement's term, franchisee is responsible for the payment of royalties and related fees owed to TUPSS that accrued through and including the date when Center de-identification was completed.

____2. Remove all The UPS Store® or Mail Boxes Etc.® exterior signage and any other exterior corporate logos or trademarks. (For instructions on removing exterior signage, see the Area Franchisee Center Closure Checklist and the Franchisee Center Closure Checklist.)

____3. Schedule de-installation and removal of the Wi-Fi equipment by contacting the SBC Project Manager via e-mail at m24351@sbc.com. NOTE: Franchisees and Area Franchisees are not authorized to de-install and remove Wi-Fi equipment.

____4. Remove or permanently cover all interior graphic striping elements, service icons, and wording.

____5. Remove or permanently cover with a metal plate all corporate logos and any other reference to the corporation on your mailboxes.

____6. Remove or permanently cover all corporate logos and any other references to the corporation on your packing stalls, trash bins, and any shopping Center signage.

____7. Remove or permanently cover any corporate logo or trademark on your Center's carpet.

____8. Assign and transfer to TUPSS or its designee the Center's telephone and fax numbers.

____9. Return or provide the following to: (i) your Area Franchisee (or his or her support representative); or (ii) the local TUPSS representative (in TUPSS-owned Areas):

____a. All interior signs and graphics depicting any corporate trademarks, service marks, copyrighted symbols, and trade dress including graphic ribbons, Point of Purchase (POP) posters, and the corporate menu board;

____b. Any and all equipment leased from or owned by TUPSS;

___c. All business cards, stationery, brochures, direct mail pieces, drop pieces, and any other type of information depicting corporate trade names or trademarks in any type or form, including, without limitation, Corporate Graphics International (CGI) posters and graphics;

___d. All parcel shipping forms, labels, and any other ongoing contracts and other material depicting corporate trade names in any form or fashion;

___e. All TUPSS proprietary hardware, software (including but not limited to Mailbox Manager and Financial Manager), disks, and computer instruction manuals;

___f. Copies of reconfigured/reprogrammed fax machine printouts, postal machine tapes, credit card terminal imprinter copies, and Point of Sale (POS) system tapes to ensure that corporate logos are not printed on any receipts or printouts;

___g. All corporate manuals, training materials, and any other documents provided to Franchisees that depict corporate trade names in any form or fashion;

___h. A copy of your letter to your Center's landlord notifying him or her of the termination of your Franchise Agreement; and

___i. Copies of letters to the local telephone directory, Yellow Pages, and other local advertisers confirming that you are no longer authorized to use the corporate name logos in connection with your business and that any advertisements should be removed upon the next printing.

___10. Notify your local vendors that you are leaving the franchise network.

**I have completed the above referenced de-identification items.**

_____          _____
**Franchisee**                                                                **Date**


**I have confirmed that Franchisee has completed the above referenced de-identification items.**

_____          _____
**Area Franchisee or Local TUPSS Representative**          **Date (as appropriate)**



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

Via UPS Next Day Air

February 5, 2014

Robert Hagan
Thomas Hagan
3A Inc.
The UPS Store Center No. 0561
1636 3rd Avenue
New York, NY 10128-3622

Re:     **Notice of Material Default and Termination:  Franchise Agreement for The UPS Store® Center No. 0561 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity 3A Inc. that (1) you are in material breach of the franchise agreement for the Center dated March 28, 2008 (the "Franchise Agreement"); and  (2) **the Franchise Agreement is terminated effective immediately, without any further notice or action from TUPSS and without an opportunity to cure.**

As you are aware, Section 12.5 of the Franchise Agreement states: *"if Franchisee's UPS Incentive Program Contract Carrier Agreement is terminated by [TUPSS's] Affiliate due to Franchisee's failure to cure any material default of that Carrier Agreement, that termination will be considered a simultaneous uncured and incurable material default under this Agreement and will automatically and simultaneously result in the immediate termination of this Agreement without any required notice or action by [TUPSS]."*  On February 5, 2014, United Parcel Service, Inc. ("UPS") terminated the UPS Store Franchisee UPS Incentive Program Contract Carrier Agreement for the Center ("Contract Carrier Agreement") due to your material breach thereof as a result of your failure to make timely payment of UPS shipping charges owed to UPS.

Additionally, Section 12.4(a) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . Franchisee . . . fails to meet its financial obligations as they become due."*  Your failure to timely pay shipping charges owed to UPS constitutes a material default under Section 12.4(a) of the Franchise Agreement.

**The UPS Store**

UPS_0001332

Further, your failure to offer UPS shipping services at the Center is a material breach of sections 7.1 and 7.2 of the Franchise Agreement, which requires you to operate the Center in compliance with TUPSS' System, Standards and Specifications, and Operations Manual.

Reference is also made to TUPSS' January 17, 2014 Notice of Material Default, a copy of which is enclosed herewith. The January 17, 2014 Notice of Material Default was issued as a result of your: (a) failure to keep the Center open and operating on January 15, 2014 in material breach of numerous provisions of the Franchise Agreement and Operations Manual; (b) use of unauthorized signage in material breach of TUPSS' center image specifications and Section 7 of the Franchise Agreement; and (c) deliberate conduct in displaying near the front door of the closed Center (and ten other centers in the Manhattan area) a copy of a summons in a lawsuit between you and your Area Franchise, conduct which reflects poorly upon the reputation of the Center and the TUPSS franchise network in material breach of Section 12.4(k) of the Franchise Agreement. That section states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS'] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS's] network of Centers generally . . . ."* Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting TUPSS to terminate your Franchise Agreement for the Center.

Further, reference is made to TUPSS's December 12, 2013 Notice of Material Default, a copy of which is enclosed herewith. The December 12, 2013 Notice of Material Default was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers in material breach of numerous provisions of the Franchise Agreement and the Contract Carrier Agreement. As you know, Section 12.4(h) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee receives 3 or more written notices of default from [TUPSS], within any period of 12 consecutive months, concerning any material breach by Franchisee, whether or not such breaches shall have been curable or cured after receipt of notice, such repeated course of conduct itself shall be considered incurable and be grounds for termination of this Agreement at the same time as, or any time after, [TUPSS] notifies Franchisee of the third material default."* As set forth above, the instant Notice of Material Default and Termination constitutes the third written notice of default for the Center within the prior 12 months.

Accordingly, for all of the foregoing reasons, **TUPSS hereby confirms the termination of the Franchise Agreement immediately.**

2

UPS_0001333

Given the termination of the Franchise Agreement, the post-termination requirements of the Franchise Agreement now apply, including, but not limited to, the non-competition and non-solicitation covenants and your duty to pay all outstanding amounts owed to TUPSS and UPS, including but not limited to payment of the outstanding shipping charges owed to UPS. TUPSS will monitor the Center to confirm your compliance with your post-termination obligations. To assist you in completing the post-termination requirements, a de-identification checklist is enclosed with this letter. Also, please be advised that should TUPSS be required to take legal action to collect any outstanding amounts, obtain de-identification, or enforce any of the post-termination provisions of the Franchise Agreement, TUPSS will seek reimbursement of its attorneys' fees and costs incurred in such efforts.

TUPSS reserves all of its rights and remedies under the Franchise Agreement and related documents, under all applicable law and in equity.

Sincerely,

Don Higginson

Enclosures

cc:     United Parcel Service, Inc.
        Peter M. Ellis

3

UPS_0001334



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day**

January 17, 2014

Robert Hagan
Thomas Hagan
3A Inc.
The UPS Store Center No. 0561
1636 3rd Avenue
New York, NY 10128-3622

**Re:    Notice of Material Default: The UPS Store Center No. 0561 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity 3A Inc. that **you are in material breach of the franchise agreement for the Center dated March 28, 2008** (the "Franchise Agreement") as a result of (a) failing to keep the Center open and operating on January 15, 2014, and (b) your conduct which impairs the goodwill associated with TUPSS' trademarks and which reflects materially and unfavorably upon the operation and reputation of the Center as well as the TUPSS franchise network. Furthermore, as detailed below, **you must immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with The UPS Store, Inc. Center Operations Manual** (the "Operations Manual").

As you are aware, Section 7.1(a) of the Franchise Agreement states: *"Franchisee shall adhere to the System developed by [TUPSS] for the operation of the Center, including the system for postal, packaging, shipping, business and communication retail service centers under the Marks, as provided herein and in the Manuals."* Section 7.1(b) of the Franchise Agreement states: *"Franchisee shall operate the Center in compliance with [TUPSS'] then-current Standards and Specifications for external/internal center image specifications."* As you are also aware, Section 7.2 of the Franchise Agreement states: *"Franchisee shall strictly adhere to the Standards and Specifications set forth in the Manuals."*

Further, the Operations Manual provides that *"Each Franchisee is required to comply with current operating hours standards unless otherwise specified in his or her Franchise Agreement,"* and that *"TUPSS requires all Centers to be open for business during the same hours of the day Monday through Friday."*

**The UPS Store**

UPS_0001335

Additionally, Section 12.4(k) of the Franchise Agreement states: "*Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS'] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS] network of Centers generally . . . ."*

TUPSS has learned that on Wednesday, January 15, 2014, you, without prior authorization, closed, during normal business hours, not just the Center, but all 11 of the centers under Messr. Hagans' control (representing approximately one fifth of all TUPSS centers in Manhattan). Moreover, near the front door of each center you prominently displayed a copy of the summons from a recent lawsuit you initiated against your Area Franchise. You also posted a sign on the front door of the centers that stated that "our store is closed" and directed customers needing assistance to call United Parcel Service's customer service number, (800) 742-5877. Your failure to comply with the Operating Hours requirements in the Operations Manual constitutes a material violation of the Operating Standards and Specifications provision of Sections 7.1(a) and 7.2 of the Franchise Agreement. Your use of unauthorized signage also violated TUPSS' center image specifications and as such also violates 7.1(b) of the Franchise Agreement.

Additionally, you have engaged in conduct that reflects poorly upon the reputation of the Center and the TUPSS franchise network. For example, among other things, your deliberate failure to keep the centers open and operating, while instead prominently displaying near the front door a summons in a lawsuit between you and your Area Franchise, reflects poorly upon the reputation of each of the centers and the TUPSS franchise network and has, in fact, damaged the goodwill of the TUPSS trademarks and brand, in violation of Section 12.4(k) of the Franchise Agreement. Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting (but not obligating) TUPSS to terminate your Franchise Agreement for the Center.

**Accordingly, TUPSS hereby notifies you of your material breach of the Franchise Agreement and demands you immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with the Operations Manual.**

2

UPS_0001336

TUPSS reserves all of its rights and remedies under the Franchise Agreement under all applicable law and in equity.

Sincerely,

Don Higginson

3



**Leonard E. Hudson**
Direct Phone: +1 312 207 2412
Email: lhudson@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

December 12, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
The UPS Store Center No. 0523, 0561, 1141,
1227, 1382, 6281, 6280, 5308 and 4311
c/o Stephen J. Savva, Esq.
546 5th Ave.
6th Floor
New York, NY 10036

Re: **Notice of Material Default: The UPS Store Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 6280, and 6281 (The "Centers")**

Dear Messrs. Hagan:

Reed Smith LLP represents United Parcel Service, Inc. ("UPS") and The UPS Store, Inc. ("TUPSS") in connection with various matters. Reference is made to the November 6, 2013 Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate correspondence (the "Cease and Desist"). A copy of the Cease and Desist is enclosed herewith. The Cease and Desist was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers. The Cease and Desist advised, among other things, that: (1) TUPSS had obtained credible evidence that the Centers have been systematically overcharging customers on UPS shipments as part of a scheme to increase your profits; (2) your conduct is wholly improper and each potentially fraudulent transaction constituted a material breach of numerous provisions of the written franchise agreements for the Centers (the "Franchise Agreements") as well as the UPS Incentive Program Contract Carrier Agreements (the "Contract Carrier Agreements") for the Centers; and (3) your misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation. The Cease and Desist demanded that you provide an explanation for your misconduct at the meeting with TUPSS representatives then-scheduled for November 12, 2013, in San Diego, California.

On November 12, 2013, you met with TUPSS representatives at TUPSS headquarters in San Diego, California. During that meeting you were advised of, among other things, the following:

1. As a result of misconduct relating to UPS shipping at the Centers, you would receive the instant Notice of Material Default; and

2. That TUPSS would require you to, among things, (a) immediately cease and desist all misconduct in connection with the Franchise Agreements, including overcharging for UPS shipping at the Centers; (b) develop and implement an action plan to prevent future violations relating to overcharging for UPS shipping at the Centers; and (c) acknowledge and agree that any future violations of this nature would be

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ SHANGHAI ♦ PITTSBURGH ♦ HOUSTON
SINGAPORE ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE ♦ KAZAKHSTAN

UPS_0001338

taken very seriously, including but limited to the potential termination of the Franchise Agreements for the Centers.

During the November 12 meeting, you questioned the veracity of the allegations regarding UPS shipping overcharging and requested additional information regarding the same. That requested information has been provided. Additionally, during the November 12 meeting and in subsequent email correspondence dated December 6, 2013, you raised extraneous issues other than your Centers' misconduct. While TUPSS acknowledges your comments and concerns as well as your email, TUPSS recommends that you focus your attention exclusively on full and complete compliance with your contractual obligations under the Franchise Agreements and Contract Carrier Agreements for the Centers.

Thus, **TUPSS HEREBY NOTIFIES YOU OF AND CONFIRMS YOUR MATERIAL DEFAULT OF THE FRANCHISE AGREEMENTS FOR THE CENTERS. SIMILARLY, UPS FURTHER NOTIFIES YOU THAT YOUR CONDUCT CONSTITUTES A MATERIAL DEFAULT OF CONTRACT CARRIER AGREEMENTS.**

As you are aware, the Contract Carrier Agreements provide that, in order to receive the incentives or discounts referenced in those agreements, you agreed, among other obligations, not to charge customers more than the maximum UPS retail prices designated by UPS for the various UPS shipping services and options offered by the Centers to customers. The Contract Carrier Agreements further provide that it shall be a material default of the agreements to, among other things, charge customers in excess of UPS's designated maximum retail prices for the various UPS shipping services and options. Additionally, the Contract Carrier Agreements provide that the use of a non-compliant manifest system or incorrect rates will result in a charge of $0.50 per package or $35.00 per week, whichever is greater, and that UPS may terminate the agreements in the event that you use a non-compliant manifest system or incorrect rates and fail to cure such defaults as required.

Moreover, in the Franchise Agreements you agreed to operate the Centers in compliance with TUPSS's Standards and Specifications, which include restrictions on Franchisees' maximum retail prices for various UPS shipping services. Pursuant to the Franchise Agreements, Franchisees may not charge customers more than the maximum retail prices designated by TUPSS's Affiliate for various UPS shipping services offered by the Centers to customers. The Franchise Agreements further provide that you shall be deemed to be in material default and that TUPSS may, at its option, terminate the agreements and all rights thereunder, without affording you any opportunity to cure the default, if you materially impair the goodwill associated with TUPSS's Marks or TUPSS's rights therein, or take any action that reflects materially and unfavorably upon the operation and reputation of the Centers or upon TUPSS's franchise network generally. Additionally, the Franchise Agreements provide that any material default by Franchisees under the terms and conditions of the agreements, or any other agreement between TUPSS (or its Affiliate) and Franchisees shall be deemed to be a material default of each and every said agreement. Thus, a material default pursuant to the Contract Carrier Agreements constitutes a material default under the Franchise Agreements.

In the event the above-referenced misconduct continues at the Centers, TUPSS and UPS may take additional actions to enforce their rights under the Franchise Agreements and Contract Carrier Agreements and to protect the goodwill of the Marks and TUPSS's franchise network, including but not limited to, terminating the Franchise Agreements and Contract Carrier Agreements for each of the Centers. Additionally, in their sole discretion, TUPSS and UPS may:

1. require you to engage, at your expense, a third-party auditor approved by TUPSS and UPS to perform a full accounting of all improper transactions conducted at the Centers;

2. require you to disgorge all ill-gotten gains obtained from your misconduct;

3. to the extent that reimbursement of funds to customers is necessary, require that you engage, at your expense, a third-party administrator approved by TUPSS and UPS to administer such process; and/or

4. require you to indemnify and reimburse TUPSS and UPS for all costs and expenses, including attorneys' fees, incurred as a result of the misconduct.

You are reminded that, in the event that the Franchise Agreements are terminated, all post-termination requirements of the Franchise Agreements will apply, including, but not limited to, the covenant against competition and your duty to pay all outstanding amounts owed to TUPSS and UPS, respectively. Also, please be advised that should TUPSS or UPS be required to take legal action to collect any outstanding amounts or enforce any of the post-term provisions of the Franchise Agreements, TUPSS and UPS will seek reimbursement of their attorneys' fees and costs incurred in such efforts.

TUPSS and UPS reserve all of rights and remedies under the Franchise Agreements, Contract Carrier Agreements (and related agreements), and under all applicable law and in equity.

Please give this matter your immediate attention and direct to my attention all future communications relating to this matter.

Sincerely,

Leonard E. Hudson

Enclosure

cc:     The UPS Store, Inc.
        United Parcel Service, Inc.

**Franchise Services Dept.**

**The UPS Store®**
6060 Cornerstone Court West
San Diego, CA 92121
8584558800 Tel
8585978542 Fax
8883463623 Tel



November 6, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
1202 Lexington Avenue
New York, NY 10028-1425

Robert Hagan
Thomas Hagan
3A Inc.
1636 3rd Avenue
New York, NY 10128-3622

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
331 W. 57th Street
New York, NY 10019-3101

Robert Hagan
Thomas Hagan
Tanmor, Inc.
527 3rd Avenue
New York, NY 10016

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
1562 First Avenue
New York, NY 10028-4004

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
303 Park Avenue South
New York, NY 10010-3657

Robert Hagan
Thomas Hagan
Ridgedown, Inc.
342 Broadway
New York, NY 10013

Robert Hagan
Thomas Hagan
Robpack, LLC
328 8th Avenue
New York, NY 10001-4857

Robert Hagan
Thomas Hagan
Ridge Pen, LLC
1474 3rd Avenue
New York, NY 10028

Robert Hagan
Thomas Hagan
Tompack LLC
222 8th Avenue
New York, NY 10011

Robert Hagan
Thomas Hagan
Bigpack, LLC
694 10th Avenue
New York, NY 10019

**The UPS Store**

UPS_0001341



**Re:** **Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate**
**The UPS Store® Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 5613, 6280,**
**6281, and 6283 (The "Centers")**

Dear Messrs. Hagan:

As franchisees of The UPS Store, Inc. ("TUPSS"), you know the importance of The UPS Store® brand and the associated goodwill. The mission of the TUPSS franchise network is to make business easier and deliver convenient solutions with world-class customer service to our loyal customers. Providing world-class customer service means, among other things, acting with integrity. When TUPSS discovers dishonesty in its network, it must take strong action to protect its brand and reputation.

TUPSS has recently discovered what appears to be a widespread pattern of improper and dishonest conduct at your Centers. Specifically, TUPSS has credible evidence that your Centers have been systematically overcharging customers for UPS shipments as part of a scheme to increase your profits. This conduct is wholly improper and each potentially fraudulent transaction constitutes a material breach of numerous provisions of the Franchise Agreements and the UPS Incentive Program Contract Carrier Agreements for the Centers. Moreover, this misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation.

Accordingly, **TUPSS demands that you and the Centers immediately cease and desist charging customers in excess of the maximum UPS Retail rate and comply fully with the TUPSS and UPS operational requirements, including adhering to the strict maximum retail pricing for UPS shipping.**

TUPSS and UPS are still investigating this matter to evaluate the full scope and duration of your misconduct and determine an appropriate resolution. In connection with this investigation, **TUPSS demands that you provide an explanation for the above-referenced misconduct at the meeting with TUPSS representatives currently scheduled for November 12, 2013 in San Diego, California.** Please be advised that TUPSS takes this matter very seriously. In the event TUPSS is not satisfied with your explanation, additional actions may be taken, including but not limited to termination of the Franchise Agreements for the Centers.

The UPS Store

UPS_0001342



TUPSS and its affiliates reserve all of their rights and remedies under the Franchise Agreement and related contracts under all applicable law and in equity.

Please give this matter your immediate attention.

Sincerely,

*Jim Hillquist*
*V.P of Operations*

cc:     United Parcel Service, Inc.

The UPS Store

UPS_0001343

# Franchisee De-identification Checklist:
## Center #

I. Complete and submit this checklist as indicated below.
1. The Franchisee must place an "X" next to the items below when completed.
2. The Franchisee must sign this checklist and give it to the Area Franchisee (or his or her support representative) or, if the Franchisee's Center is located in a TUPSS-owned Area, to a local TUPSS representative for verification and signature.
3. De-identification must take place immediately after franchise termination. The Area Franchisee must submit the completed checklist (along with exterior and interior photographs of the de-identified Center) to the Closure Specialist.

II. In the event of termination and/or expiration of the Franchise Agreement for any reason, you must do the following:

____1. Pay in full any and all monies due TUPSS that accrued through the date of complete de-identification. In other words, if terminated franchisee operates the Center for any period of time after the last date of the franchise agreement's term, franchisee is responsible for the payment of royalties and related fees owed to TUPSS that accrued through and including the date when Center de-identification was completed.

____2. Remove all The UPS Store® or Mail Boxes Etc.® exterior signage and any other exterior corporate logos or trademarks. (For instructions on removing exterior signage, see the Area Franchisee Center Closure Checklist and the Franchisee Center Closure Checklist.)

____3. Schedule de-installation and removal of the Wi-Fi equipment by contacting the SBC Project Manager via e-mail at m24351@sbc.com. NOTE: Franchisees and Area Franchisees are not authorized to de-install and remove Wi-Fi equipment.

____4. Remove or permanently cover all interior graphic striping elements, service icons, and wording.

____5. Remove or permanently cover with a metal plate all corporate logos and any other reference to the corporation on your mailboxes.

____6. Remove or permanently cover all corporate logos and any other references to the corporation on your packing stalls, trash bins, and any shopping Center signage.

____7. Remove or permanently cover any corporate logo or trademark on your Center's carpet.

____8. Assign and transfer to TUPSS or its designee the Center's telephone and fax numbers.

____9. Return or provide the following to: (i) your Area Franchisee (or his or her support representative); or (ii) the local TUPSS representative (in TUPSS-owned Areas):

____a. All interior signs and graphics depicting any corporate trademarks, service marks, copyrighted symbols, and trade dress including graphic ribbons, Point of Purchase (POP) posters, and the corporate menu board;

____b. Any and all equipment leased from or owned by TUPSS;

UPS_0001344

   c. All business cards, stationery, brochures, direct mail pieces, drop pieces, and any other type of information depicting corporate trade names or trademarks in any type or form, including, without limitation, Corporate Graphics International (CGI) posters and graphics;

   d. All parcel shipping forms, labels, and any other ongoing contracts and other material depicting corporate trade names in any form or fashion;

   e. All TUPSS proprietary hardware, software (including but not limited to Mailbox Manager and Financial Manager), disks, and computer instruction manuals;

   f. Copies of reconfigured/reprogrammed fax machine printouts, postal machine tapes, credit card terminal imprinter copies, and Point of Sale (POS) system tapes to ensure that corporate logos are not printed on any receipts or printouts;

   g. All corporate manuals, training materials, and any other documents provided to Franchisees that depict corporate trade names in any form or fashion;

   h. A copy of your letter to your Center's landlord notifying him or her of the termination of your Franchise Agreement; and

   i. Copies of letters to the local telephone directory, Yellow Pages, and other local advertisers confirming that you are no longer authorized to use the corporate name logos in connection with your business and that any advertisements should be removed upon the next printing.

   10. Notify your local vendors that you are leaving the franchise network.

**I have completed the above referenced de-identification items.**

_____      _____
**Franchisee**                      **Date**

**I have confirmed that Franchisee has completed the above referenced de-identification items.**

_____      _____
**Area Franchisee or Local TUPSS Representative**      **Date (as appropriate)**



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day Air**

February 5, 2014

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
The UPS Store Center No. 1141
331 W. 57th Street
New York, NY 10019-3101

**Re:    Notice of Material Default and Termination:  Franchise Agreement for The UPS Store® Center No. 1141 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Ridgepac, Inc. that (1) you are in material breach of the franchise agreement for the Center dated July 7, 2009 (the "Franchise Agreement"); and (2) **the Franchise Agreement is terminated effective immediately, without any further notice or action from TUPSS and without an opportunity to cure.**

As you are aware, Section 12.5 of the Franchise Agreement states: *"if Franchisee's UPS Incentive Program Contract Carrier Agreement is terminated by [TUPSS's] Affiliate due to Franchisee's failure to cure any material default of that Carrier Agreement, that termination will be considered a simultaneous uncured and incurable material default under this Agreement and will automatically and simultaneously result in the immediate termination of this Agreement without any required notice or action by [TUPSS]."*  On February 5, 2014, United Parcel Service, Inc. ("UPS") terminated the UPS Store Franchisee UPS Incentive Program Contract Carrier Agreement for the Center ("Contract Carrier Agreement") due to your material breach thereof as a result of your failure to make timely payment of UPS shipping charges owed to UPS.

Additionally, Section 12.4(a) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . Franchisee . . . fails to meet its financial obligations as they become due."*  Your failure to timely pay shipping charges owed to UPS constitutes a material default under Section 12.4(a) of the Franchise Agreement.

The UPS Store

UPS_0001346

Further, your failure to offer UPS shipping services at the Center is a material breach of sections 7.1 and 7.2 of the Franchise Agreement, which requires you to operate the Center in compliance with TUPSS' System, Standards and Specifications, and Operations Manual.

Reference is also made to TUPSS' January 17, 2014 Notice of Material Default, a copy of which is enclosed herewith. The January 17, 2014 Notice of Material Default was issued as a result of your: (a) failure to keep the Center open and operating on January 15, 2014 in material breach of numerous provisions of the Franchise Agreement and Operations Manual; (b) use of unauthorized signage in material breach of TUPSS' center image specifications and Section 7 of the Franchise Agreement; and (c) deliberate conduct in displaying near the front door of the closed Center (and ten other centers in the Manhattan area) a copy of a summons in a lawsuit between you and your Area Franchise, conduct which reflects poorly upon the reputation of the Center and the TUPSS franchise network in material breach of Section 12.4(k) of the Franchise Agreement. That section states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS's] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS's] network of Centers generally . . . ."* Among other things, your conduct left customers fearful for the security of their packages and uncertain the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting TUPSS to terminate your Franchise Agreement for the Center.

Further, reference is made to TUPSS's December 12, 2013 Notice of Material Default, a copy of which is enclosed herewith. The December 12, 2013 Notice of Material Default was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers in material breach of numerous provisions of the Franchise Agreement and the Contract Carrier Agreement. As you know, Section 12.4(h) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee receives 3 or more written notices of default from [TUPSS], within any period of 12 consecutive months, concerning any material breach by Franchisee, whether or not such breaches shall have been curable or cured after receipt of notice. Such repeated course of conduct itself shall be considered incurable and be grounds for termination of this Agreement at the same time as, or any time after, [TUPSS] notifies Franchisee of the third material default."* As set forth above, the instant Notice of Material Default and Termination constitutes the third written notice of default for the Center within the prior 12 months.

Accordingly, for all of the foregoing reasons, **TUPSS hereby confirms the termination of the Franchise Agreement immediately.**

2

UPS_0001347

Given the termination of the Franchise Agreement, the post-termination requirements of the Franchise Agreement now apply, including, but not limited to, the non-competition and non-solicitation covenants and your duty to pay all outstanding amounts owed to TUPSS and UPS, including but not limited to payment of the outstanding shipping charges owed to UPS. TUPSS will monitor the Center to confirm your compliance with your post-termination obligations. To assist you in completing the post-termination requirements, a de-identification checklist is enclosed with this letter. Also, please be advised that should TUPSS be required to take legal action to collect any outstanding amounts, obtain de-identification, or enforce any of the post-termination provisions of the Franchise Agreement, TUPSS will seek reimbursement of its attorneys' fees and costs incurred in such efforts.

TUPSS reserves all of its rights and remedies under the Franchise Agreement and related documents, under all applicable law and in equity.

Sincerely,

Don Higginson

Enclosures

cc:     United Parcel Service, Inc.
        Peter M. Ellis

3



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day**

January 17, 2014

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
The UPS Store Center No. 1141
331 W. 57th Street
New York, NY 10019-3101

Re:     Notice of Material Default: The UPS Store Center No. 1141 (the "Center")

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Ridgepac, Inc. that **you are in material breach of the franchise agreement for the Center dated July 7, 2009** (the "Franchise Agreement") as a result of the (a) failing to keep the Center open and operating on January 15, 2014, and (b) your conduct which impairs the goodwill associated with TUPSS' trademarks and which reflects materially and unfavorably upon the operation and reputation of the Center as well as the TUPSS franchise network. Furthermore, as detailed below, **you must immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with The UPS Store, Inc. Center Operations Manual** (the "Operations Manual").

As you are aware, Section 7.1(a) of the Franchise Agreement states: *"Franchisee shall adhere to the System developed by [TUPSS] for the operation of the Center, including the system for postal, packaging, shipping, business and communication retail service centers under the Marks, as provided herein and in the Manuals."* Section 7.1(b) of the Franchise Agreement states: *"Franchisee shall operate the Center in compliance with [TUPSS'] then-current Standards and Specifications for external/internal center image specifications."* As you are also aware, Section 7.2 of the Franchise Agreement states: *"Franchisee shall strictly adhere to the Standards and Specifications set forth in the Manuals."*

Further, the Operations Manual provides that *"Each Franchisee is required to comply with current operating hours standards unless otherwise specified in his or her Franchise Agreement,"* and that *"TUPSS requires all Centers to be open for business during the same hours of the day Monday through Friday."*

**The UPS Store**

UPS_0001349

Additionally, Section 12.4(k) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS'] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS] network of Centers generally . . . ."*

TUPSS has learned that on Wednesday, January 15, 2014, you, without prior authorization, closed, during normal business hours, not just the Center, but all 11 of the centers under Messr. Hagans' control (representing approximately one fifth of all TUPSS centers in Manhattan). Moreover, near the front door of each center you prominently displayed a copy of the summons from a recent lawsuit you initiated against your Area Franchise. You also posted a sign on the front door of the centers that stated that "our store is closed" and directed customers needing assistance to call United Parcel Service's customer service number, (800) 742-5877. Your failure to comply with the Operating Hours requirements in the Operations Manual constitutes a material violation of the Operating Standards and Specifications provision of Sections 7.1(a) and 7.2 of the Franchise Agreement. Your use of unauthorized signage also violated TUPSS' center image specifications and as such also violates 7.1(b) of the Franchise Agreement.

Additionally, you have engaged in conduct that reflects poorly upon the reputation of the Center and the TUPSS franchise network. For example, among other things, your deliberate failure to keep the centers open and operating, while instead prominently displaying near the front door a summons in a lawsuit between you and your Area Franchise, reflects poorly upon the reputation of each of the centers and the TUPSS franchise network and has, in fact, damaged the goodwill of the TUPSS trademarks and brand, in violation of Section 12.4(k) of the Franchise Agreement. Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting (but not obligating) TUPSS to terminate your Franchise Agreement for the Center.

**Accordingly, TUPSS hereby notifies you of your material breach of the Franchise Agreement and demands you immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with the Operations Manual.**

2

UPS_0001350

TUPSS reserves all of its rights and remedies under the Franchise Agreement under all applicable law and in equity.

Sincerely,

Don Higginson

3

UPS_0001351

# ReedSmith

Leonard E. Hudson
Direct Phone: +1 312 207 2412
Email: lhudson@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

December 12, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
The UPS Store Center No. 0523, 0561, 1141,
1227, 1382, 6281, 6280, 5308 and 4311
c/o Stephen J. Savva, Esq.
546 5th Ave.
6th Floor
New York, NY 10036

Re:     **Notice of Material Default: The UPS Store Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 6280, and 6281 (The "Centers")**

Dear Messrs. Hagan:

Reed Smith LLP represents United Parcel Service, Inc. ("UPS") and The UPS Store, Inc. ("TUPSS") in connection with various matters. Reference is made to the November 6, 2013 Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate correspondence (the "Cease and Desist"). A copy of the Cease and Desist is enclosed herewith. The Cease and Desist was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers. The Cease and Desist advised, among other things, that: (1) TUPSS had obtained credible evidence that the Centers have been systematically overcharging customers on UPS shipments as part of a scheme to increase your profits; (2) your conduct is wholly improper and each potentially fraudulent transaction constituted a material breach of numerous provisions of the written franchise agreements for the Centers (the "Franchise Agreements") as well as the UPS Incentive Program Contract Carrier Agreements (the "Contract Carrier Agreements") for the Centers; and (3) your misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation. The Cease and Desist demanded that you provide an explanation for your misconduct at the meeting with TUPSS representatives then-scheduled for November 12, 2013, in San Diego, California.

On November 12, 2013, you met with TUPSS representatives at TUPSS headquarters in San Diego, California. During that meeting you were advised of, among other things, the following:

1. As a result of misconduct relating to UPS shipping at the Centers, you would receive the instant Notice of Material Default; and

2. That TUPSS would require you to, among things, (a) immediately cease and desist all misconduct in connection with the Franchise Agreements, including overcharging for UPS shipping at the Centers; (b) develop and implement an action plan to prevent future violations relating to overcharging for UPS shipping at the Centers; and (c) acknowledge and agree that any future violations of this nature would be

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ SHANGHAI ♦ PITTSBURGH ♦ HOUSTON
SINGAPORE ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE ♦ KAZAKHSTAN

UPS_0001352

taken very seriously, including but limited to the potential termination of the Franchise Agreements for the Centers.

During the November 12 meeting, you questioned the veracity of the allegations regarding UPS shipping overcharging and requested additional information regarding the same. That requested information has been provided. Additionally, during the November 12 meeting and in subsequent email correspondence dated December 6, 2013, you raised extraneous issues other than your Centers' misconduct. While TUPSS acknowledges your comments and concerns as well as your email, TUPSS recommends that you focus your attention exclusively on full and complete compliance with your contractual obligations under the Franchise Agreements and Contract Carrier Agreements for the Centers.

Thus, **TUPSS HEREBY NOTIFIES YOU OF AND CONFIRMS YOUR MATERIAL DEFAULT OF THE FRANCHISE AGREEMENTS FOR THE CENTERS. SIMILARLY, UPS FURTHER NOTIFIES YOU THAT YOUR CONDUCT CONSTITUTES A MATERIAL DEFAULT OF CONTRACT CARRIER AGREEMENTS.**

As you are aware, the Contract Carrier Agreements provide that, in order to receive the incentives or discounts referenced in those agreements, you agreed, among other obligations, not to charge customers more than the maximum UPS retail prices designated by UPS for the various UPS shipping services and options offered by the Centers to customers. The Contract Carrier Agreements further provide that it shall be a material default of the agreements to, among other things, charge customers in excess of UPS's designated maximum retail prices for the various UPS shipping services and options. Additionally, the Contract Carrier Agreements provide that the use of a non-compliant manifest system or incorrect rates will result in a charge of $0.50 per package or $35.00 per week, whichever is greater, and that UPS may terminate the agreements in the event that you use a non-compliant manifest system or incorrect rates and fail to cure such defaults as required.

Moreover, in the Franchise Agreements you agreed to operate the Centers in compliance with TUPSS's Standards and Specifications, which include restrictions on Franchisees' maximum retail prices for various UPS shipping services. Pursuant to the Franchise Agreements, Franchisees may not charge customers more than the maximum retail prices designated by TUPSS's Affiliate for various UPS shipping services offered by the Centers to customers. The Franchise Agreements further provide that you shall be deemed to be in material default and that TUPSS may, at its option, terminate the agreements and all rights thereunder, without affording you any opportunity to cure the default, if you materially impair the goodwill associated with TUPSS's Marks or TUPSS's rights therein, or take any action that reflects materially and unfavorably upon the operation and reputation of the Centers or upon TUPSS's franchise network generally. Additionally, the Franchise Agreements provide that any material default by Franchisees under the terms and conditions of the agreements, or any other agreement between TUPSS (or its Affiliate) and Franchisees shall be deemed to be a material default of each and every said agreement. Thus, a material default pursuant to the Contract Carrier Agreements constitutes a material default under the Franchise Agreements.

In the event the above-referenced misconduct continues at the Centers, TUPSS and UPS may take additional actions to enforce their rights under the Franchise Agreements and Contract Carrier Agreements and to protect the goodwill of the Marks and TUPSS's franchise network, including but not limited to, terminating the Franchise Agreements and Contract Carrier Agreements for each of the Centers. Additionally, in their sole discretion, TUPSS and UPS may:

1. require you to engage, at your expense, a third-party auditor approved by TUPSS and UPS to perform a full accounting of all improper transactions conducted at the Centers;

2. require you to disgorge all ill-gotten gains obtained from your misconduct;

3. to the extent that reimbursement of funds to customers is necessary, require that you engage, at your expense, a third-party administrator approved by TUPSS and UPS to administer such process; and/or

4. require you to indemnify and reimburse TUPSS and UPS for all costs and expenses, including attorneys' fees, incurred as a result of the misconduct.

You are reminded that, in the event that the Franchise Agreements are terminated, all post-termination requirements of the Franchise Agreements will apply, including, but not limited to, the covenant against competition and your duty to pay all outstanding amounts owed to TUPSS and UPS, respectively. Also, please be advised that should TUPSS or UPS be required to take legal action to collect any outstanding amounts or enforce any of the post-term provisions of the Franchise Agreements, TUPSS and UPS will seek reimbursement of their attorneys' fees and costs incurred in such efforts.

TUPSS and UPS reserve all of rights and remedies under the Franchise Agreements, Contract Carrier Agreements (and related agreements), and under all applicable law and in equity.

Please give this matter your immediate attention and direct to my attention all future communications relating to this matter.

Sincerely,

Leonard E. Hudson

Enclosure

cc:     The UPS Store, Inc.
        United Parcel Service, Inc.

**Franchise Services Dept.**

**The UPS Store®**
6060 Cornerstone Court West
San Diego, CA 92121
8584558800 Tel
8585978542 Fax
8883463623 Tel

November 6, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
1202 Lexington Avenue
New York, NY 10028-1425

Robert Hagan
Thomas Hagan
3A Inc.
1636 3rd Avenue
New York, NY 10128-3622

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
331 W. 57th Street
New York, NY 10019-3101

Robert Hagan
Thomas Hagan
Tanmor, Inc.
527 3rd Avenue
New York, NY 10016

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
1562 First Avenue
New York, NY 10028-4004

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
303 Park Avenue South
New York, NY 10010-3657

Robert Hagan
Thomas Hagan
Ridgedown, Inc.
342 Broadway
New York, NY 10013

Robert Hagan
Thomas Hagan
Robpack, LLC
328 8th Avenue
New York, NY 10001-4857

Robert Hagan
Thomas Hagan
Ridge Pen, LLC
1474 3rd Avenue
New York, NY 10028

Robert Hagan
Thomas Hagan
Tompack LLC
222 8th Avenue
New York, NY 10011

Robert Hagan
Thomas Hagan
Bigpack, LLC
694 10th Avenue
New York, NY 10019

**The UPS Store**

UPS_0001355



**Re:** Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate
The UPS Store® Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 5613, 6280, 6281, and 6283 (The "Centers")

Dear Messrs. Hagan:

As franchisees of The UPS Store, Inc. ("TUPSS"), you know the importance of The UPS Store® brand and the associated goodwill. The mission of the TUPSS franchise network is to make business easier and deliver convenient solutions with world-class customer service to our loyal customers. Providing world-class customer service means, among other things, acting with integrity. When TUPSS discovers dishonesty in its network, it must take strong action to protect its brand and reputation.

TUPSS has recently discovered what appears to be a widespread pattern of improper and dishonest conduct at your Centers. Specifically, TUPSS has credible evidence that your Centers have been systematically overcharging customers for UPS shipments as part of a scheme to increase your profits. This conduct is wholly improper and each potentially fraudulent transaction constitutes a material breach of numerous provisions of the Franchise Agreements and the UPS Incentive Program Contract Carrier Agreements for the Centers. Moreover, this misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation.

Accordingly, **TUPSS demands that you and the Centers immediately cease and desist charging customers in excess of the maximum UPS Retail rate and comply fully with the TUPSS and UPS operational requirements, including adhering to the strict maximum retail pricing for UPS shipping.**

TUPSS and UPS are still investigating this matter to evaluate the full scope and duration of your misconduct and determine an appropriate resolution. In connection with this investigation, **TUPSS demands that you provide an explanation for the above-referenced misconduct at the meeting with TUPSS representatives currently scheduled for November 12, 2013 in San Diego, California.** Please be advised that TUPSS takes this matter very seriously. In the event TUPSS is not satisfied with your explanation, additional actions may be taken, including but not limited to termination of the Franchise Agreements for the Centers.

- 2 -

The UPS Store

UPS_0001356



TUPSS and its affiliates reserve all of their rights and remedies under the Franchise Agreement and related contracts under all applicable law and in equity.
Please give this matter your immediate attention.

Sincerely,

*Jim Hillquist*
*V.P of Operations*


cc:    United Parcel Service, Inc.

**The UPS Store**

UPS_0001357

# Franchisee De-identification Checklist:
### Center #

I. Complete and submit this checklist as indicated below.
1. The Franchisee must place an "X" next to the items below when completed.
2. The Franchisee must sign this checklist and give it to the Area Franchisee (or his or her support representative) or, if the Franchisee's Center is located in a TUPSS-owned Area, to a local TUPSS representative for verification and signature.
3. De-identification must take place immediately after franchise termination. The Area Franchisee must submit the completed checklist (along with exterior and interior photographs of the de-identified Center) to the Closure Specialist.

II. In the event of termination and/or expiration of the Franchise Agreement for any reason, you must do the following:

____1. Pay in full any and all monies due TUPSS that accrued through the date of complete de-identification. In other words, if terminated franchisee operates the Center for any period of time after the last date of the franchise agreement's term, franchisee is responsible for the payment of royalties and related fees owed to TUPSS that accrued through and including the date when Center de-identification was completed.

____2. Remove all The UPS Store® or Mail Boxes Etc.® exterior signage and any other exterior corporate logos or trademarks. (For instructions on removing exterior signage, see the Area Franchisee Center Closure Checklist and the Franchisee Center Closure Checklist.)

____3. Schedule de-installation and removal of the Wi-Fi equipment by contacting the SBC Project Manager via e-mail at m24351@sbc.com. NOTE: Franchisees and Area Franchisees are not authorized to de-install and remove Wi-Fi equipment.

____4. Remove or permanently cover all interior graphic striping elements, service icons, and wording.

____5. Remove or permanently cover with a metal plate all corporate logos and any other reference to the corporation on your mailboxes.

____6. Remove or permanently cover all corporate logos and any other references to the corporation on your packing stalls, trash bins, and any shopping Center signage.

____7. Remove or permanently cover any corporate logo or trademark on your Center's carpet.

____8. Assign and transfer to TUPSS or its designee the Center's telephone and fax numbers.

____9. Return or provide the following to: (i) your Area Franchisee (or his or her support representative); or (ii) the local TUPSS representative (in TUPSS-owned Areas):

____a. All interior signs and graphics depicting any corporate trademarks, service marks, copyrighted symbols, and trade dress including graphic ribbons, Point of Purchase (POP) posters, and the corporate menu board;

____b. Any and all equipment leased from or owned by TUPSS;

UPS_0001358

_____c. All business cards, stationery, brochures, direct mail pieces, drop pieces, and any other type of information depicting corporate trade names or trademarks in any type or form, including, without limitation, Corporate Graphics International (CGI) posters and graphics;

_____d. All parcel shipping forms, labels, and any other ongoing contracts and other material depicting corporate trade names in any form or fashion;

_____e. All TUPSS proprietary hardware, software (including but not limited to Mailbox Manager and Financial Manager), disks, and computer instruction manuals;

_____f. Copies of reconfigured/reprogrammed fax machine printouts, postal machine tapes, credit card terminal imprinter copies, and Point of Sale (POS) system tapes to ensure that corporate logos are not printed on any receipts or printouts;

_____g. All corporate manuals, training materials, and any other documents provided to Franchisees that depict corporate trade names in any form or fashion;

_____h. A copy of your letter to your Center's landlord notifying him or her of the termination of your Franchise Agreement; and

_____i. Copies of letters to the local telephone directory, Yellow Pages, and other local advertisers confirming that you are no longer authorized to use the corporate name logos in connection with your business and that any advertisements should be removed upon the next printing.

_____10. Notify your local vendors that you are leaving the franchise network.


**I have completed the above referenced de-identification items.**


_____          _____
**Franchisee**                                     **Date**


**I have confirmed that Franchisee has completed the above referenced de-identification items.**


_____          _____
**Area Franchisee or Local TUPSS Representative**   **Date (as appropriate)**

UPS_0001359



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day Air**

February 5, 2014

Robert Hagan
Thomas Hagan
Tanmor, Inc.
The UPS Store Center No. 1227
527 3rd Avenue
New York, NY 10016

Re: **Notice of Material Default and Termination: Franchise Agreement for The UPS Store® Center No. 1227 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Tanmor, Inc. that (1) you are in material breach of the franchise agreement for the Center dated July 1, 2008 (the "Franchise Agreement"); and (2) **the Franchise Agreement is terminated effective immediately, without any further notice or action from TUPSS and without an opportunity to cure.**

As you are aware, Section 12.5 of the Franchise Agreement states: "*if Franchisee's UPS Incentive Program Contract Carrier Agreement is terminated by [TUPSS's] Affiliate due to Franchisee's failure to cure any material default of that Carrier Agreement, that termination will be considered a simultaneous uncured and incurable material default under this Agreement and will automatically and simultaneously result in the immediate termination of this Agreement without any required notice or action by [TUPSS].*" On February 5, 2014, United Parcel Service, Inc. ("UPS") terminated the UPS Store Franchisee UPS Incentive Program Contract Carrier Agreement for the Center ("Contract Carrier Agreement") due to your material breach thereof as a result of your failure to make timely payment of UPS shipping charges owed to UPS.

Additionally, Section 12.4(a) of the Franchise Agreement states: "*Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . Franchisee . . . fails to meet its financial obligations as they become due.*" Your failure to timely pay shipping charges owed to UPS constitutes a material default under Section 12.4(a) of the Franchise Agreement.

**The UPS Store**

UPS_0001360

Further, your failure to offer UPS shipping services at the Center is a material breach of sections 7.1 and 7.2 of the Franchise Agreement, which requires you to operate the Center in compliance with TUPSS' System, Standards and Specifications, and Operations Manual.

Reference is also made to TUPSS' January 17, 2014 Notice of Material Default, a copy of which is enclosed herewith. The January 17, 2014 Notice of Material Default was issued as a result of your: (a) failure to keep the Center open and operating on January 15, 2014 in material breach of numerous provisions of the Franchise Agreement and Operations Manual; (b) use of unauthorized signage in material breach of TUPSS' center image specifications and Section 7 of the Franchise Agreement; and (c) deliberate conduct in displaying near the front door of the closed Center (and ten other centers in the Manhattan area) a copy of a summons in a lawsuit between you and your Area Franchise, conduct which reflects poorly upon the reputation of the Center and the TUPSS franchise network in material breach of Section 12.4(k) of the Franchise Agreement. That section states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS's] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS's] network of Centers generally . . . ."* Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting TUPSS to terminate your Franchise Agreement for the Center.

Further, reference is made to TUPSS's December 12, 2013 Notice of Material Default, a copy of which is enclosed herewith. The December 12, 2013 Notice of Material Default was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers in material breach of numerous provisions of the Franchise Agreement and the Contract Carrier Agreement. As you know, Section 12.4(h) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee receives 3 or more written notices of default from [TUPSS], within any period of 12 consecutive months, concerning any material breach by Franchisee, whether or not such breaches shall have been curable or cured after receipt of notice, such repeated course of conduct itself shall be considered incurable and be grounds for termination of this Agreement at the same time as, or any time after, [TUPSS] notifies Franchisee of the third material default."* As set forth above, the instant Notice of Material Default and Termination constitutes the third written notice of default for the Center within the prior 12 months.

Accordingly, for all the foregoing reasons, **TUPSS hereby confirms the termination of the Franchise Agreement immediately.**

2

UPS_0001361

Given the termination of the Franchise Agreement, the post-termination requirements of the Franchise Agreement now apply, including, but not limited to, the non-competition and non-solicitation covenants and your duty to pay all outstanding amounts owed to TUPSS and UPS, including but not limited to payment of the outstanding shipping charges owed to UPS. TUPSS will monitor the Center to confirm your compliance with your post-termination obligations. To assist you in completing the post-termination requirements, a de-identification checklist is enclosed with this letter. Also, please be advised that should TUPSS be required to take legal action to collect any outstanding amounts, obtain de-identification, or enforce any of the post-termination provisions of the Franchise Agreement, TUPSS will seek reimbursement of its attorneys' fees and costs incurred in such efforts.

TUPSS reserves all of its rights and remedies under the Franchise Agreement and related documents, under all applicable law and in equity.

Sincerely,

Don Higginson

Enclosures

cc:     United Parcel Service, Inc.
        Peter M. Ellis

3

UPS_0001362



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day**

January 17, 2014

Robert Hagan
Thomas Hagan
Tanmor, Inc.
The UPS Store Center No. 1227
527 3rd Avenue
New York, NY 10016

**Re:** **Notice of Material Default: The UPS Store Center No. 1227 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Tanmor, Inc. that **you are in material breach of the franchise agreement for the Center dated July 1, 2008** (the "Franchise Agreement") as a result of (a) failing to keep the Center open and operating on January 15, 2014, and (b) your conduct which impairs the goodwill associated with TUPSS' trademarks and which reflects materially and unfavorably upon the operation and reputation of the Center as well as the TUPSS franchise network. Furthermore, as detailed below, **you must immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with The UPS Store, Inc. Center Operations Manual** (the "Operations Manual").

As you are aware, Section 7.1(a) of the Franchise Agreement states: *"Franchisee shall adhere to the System developed by [TUPSS] for the operation of the Center, including the system for postal, packaging, shipping, business and communication retail service centers under the Marks, as provided herein and in the Manuals."* Section 7.1(b) of the Franchise Agreement states: *"Franchisee shall operate the Center in compliance with [TUPSS'] then-current Standards and Specifications for external/internal center image specifications."* As you are also aware, Section 7.2 of the Franchise Agreement states: *"Franchisee shall strictly adhere to the Standards and Specifications set forth in the Manuals."*

Further, the Operations Manual provides that *"Each Franchisee is required to comply with current operating hours standards unless otherwise specified in his or her Franchise Agreement,"* and that *"TUPSS requires all Centers to be open for business during the same hours of the day Monday through Friday."*

**The UPS Store**

UPS_0001363

Additionally, Section 12.4(k) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS'] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS] network of Centers generally . . . ."*

TUPSS has learned that on Wednesday, January 15, 2014, you, without prior authorization, closed, during normal business hours, not just the Center, but all 11 of the centers under Messr. Hagans' control (representing approximately one fifth of all TUPSS centers in Manhattan). Moreover, near the front door of each center you prominently displayed a copy of the summons from a recent lawsuit you initiated against your Area Franchise. You also posted a sign on the front door of the centers that stated that "our store is closed" and directed customers needing assistance to call United Parcel Service's customer service number, (800) 742-5877. Your failure to comply with the Operating Hours requirements in the Operations Manual constitutes a material violation of the Operating Standards and Specifications provision of Sections 7.1(a) and 7.2 of the Franchise Agreement. Your use of unauthorized signage also violated TUPSS' center image specifications and as such also violates 7.1(b) of the Franchise Agreement.

Additionally, you have engaged in conduct that reflects poorly upon the reputation of the Center and the TUPSS franchise network. For example, among other things, your deliberate failure to keep the centers open and operating, while instead prominently displaying near the front door a summons in a lawsuit between you and your Area Franchise, reflects poorly upon the reputation of each of the centers and the TUPSS franchise network and has, in fact, damaged the goodwill of the TUPSS trademarks and brand, in violation of Section 12.4(k) of the Franchise Agreement. Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting (but not obligating) TUPSS to terminate your Franchise Agreement for the Center.

**Accordingly, TUPSS hereby notifies you of your material breach of the Franchise Agreement and demands you immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with the Operations Manual.**

UPS_0001364

TUPSS reserves all of its rights and remedies under the Franchise Agreement under all applicable law and in equity.

Sincerely,

Don Higginson

UPS_0001365



**Leonard E. Hudson**
Direct Phone: +1 312 207 2412
Email: lhudson@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

December 12, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
The UPS Store Center No. 0523, 0561, 1141,
1227, 1382, 6281, 6280, 5308 and 4311
c/o Stephen J. Savva, Esq.
546 5th Ave.
6th Floor
New York, NY 10036

Re:    **Notice of Material Default: The UPS Store Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 6280, and 6281 (The "Centers")**

Dear Messrs. Hagan:

Reed Smith LLP represents United Parcel Service, Inc. ("UPS") and The UPS Store, Inc. ("TUPSS") in connection with various matters. Reference is made to the November 6, 2013 Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate correspondence (the "Cease and Desist"). A copy of the Cease and Desist is enclosed herewith. The Cease and Desist was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers. The Cease and Desist advised, among other things, that: (1) TUPSS had obtained credible evidence that the Centers have been systematically overcharging customers on UPS shipments as part of a scheme to increase your profits; (2) your conduct is wholly improper and each potentially fraudulent transaction constituted a material breach of numerous provisions of the written franchise agreements for the Centers (the "Franchise Agreements") as well as the UPS Incentive Program Contract Carrier Agreements (the "Contract Carrier Agreements") for the Centers; and (3) your misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation. The Cease and Desist demanded that you provide an explanation for your misconduct at the meeting with TUPSS representatives then-scheduled for November 12, 2013, in San Diego, California.

On November 12, 2013, you met with TUPSS representatives at TUPSS headquarters in San Diego, California. During that meeting you were advised of, among other things, the following:

1.  As a result of misconduct relating to UPS shipping at the Centers, you would receive the instant Notice of Material Default; and

2.  That TUPSS would require you to, among things, (a) immediately cease and desist all misconduct in connection with the Franchise Agreements, including overcharging for UPS shipping at the Centers; (b) develop and implement an action plan to prevent future violations relating to overcharging for UPS shipping at the Centers; and (c) acknowledge and agree that any future violations of this nature would be

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ SHANGHAI ♦ PITTSBURGH ♦ HOUSTON
SINGAPORE ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE ♦ KAZAKHSTAN

taken very seriously, including but limited to the potential termination of the Franchise Agreements for the Centers.

During the November 12 meeting, you questioned the veracity of the allegations regarding UPS shipping overcharging and requested additional information regarding the same. That requested information has been provided. Additionally, during the November 12 meeting and in subsequent email correspondence dated December 6, 2013, you raised extraneous issues other than your Centers' misconduct. While TUPSS acknowledges your comments and concerns as well as your email, TUPSS recommends that you focus your attention exclusively on full and complete compliance with your contractual obligations under the Franchise Agreements and Contract Carrier Agreements for the Centers.

Thus, **TUPSS HEREBY NOTIFIES YOU OF AND CONFIRMS YOUR MATERIAL DEFAULT OF THE FRANCHISE AGREEMENTS FOR THE CENTERS. SIMILARLY, UPS FURTHER NOTIFIES YOU THAT YOUR CONDUCT CONSTITUTES A MATERIAL DEFAULT OF CONTRACT CARRIER AGREEMENTS.**

As you are aware, the Contract Carrier Agreements provide that, in order to receive the incentives or discounts referenced in those agreements, you agreed, among other obligations, not to charge customers more than the maximum UPS retail prices designated by UPS for the various UPS shipping services and options offered by the Centers to customers. The Contract Carrier Agreements further provide that it shall be a material default of the agreements to, among other things, charge customers in excess of UPS's designated maximum retail prices for the various UPS shipping services and options. Additionally, the Contract Carrier Agreements provide that the use of a non-compliant manifest system or incorrect rates will result in a charge of $0.50 per package or $35.00 per week, whichever is greater, and that UPS may terminate the agreements in the event that you use a non-compliant manifest system or incorrect rates and fail to cure such defaults as required.

Moreover, in the Franchise Agreements you agreed to operate the Centers in compliance with TUPSS's Standards and Specifications, which include restrictions on Franchisees' maximum retail prices for various UPS shipping services. Pursuant to the Franchise Agreements, Franchisees may not charge customers more than the maximum retail prices designated by TUPSS's Affiliate for various UPS shipping services offered by the Centers to customers. The Franchise Agreements further provide that you shall be deemed to be in material default and that TUPSS may, at its option, terminate the agreements and all rights thereunder, without affording you any opportunity to cure the default, if you materially impair the goodwill associated with TUPSS's Marks or TUPSS's rights therein, or take any action that reflects materially and unfavorably upon the operation and reputation of the Centers or upon TUPSS's franchise network generally. Additionally, the Franchise Agreements provide that any material default by Franchisees under the terms and conditions of the agreements, or any other agreement between TUPSS (or its Affiliate) and Franchisees shall be deemed to be a material default of each and every said agreement. Thus, a material default pursuant to the Contract Carrier Agreements constitutes a material default under the Franchise Agreements.

In the event the above-referenced misconduct continues at the Centers, TUPSS and UPS may take additional actions to enforce their rights under the Franchise Agreements and Contract Carrier Agreements and to protect the goodwill of the Marks and TUPSS's franchise network, including but not limited to, terminating the Franchise Agreements and Contract Carrier Agreements for each of the Centers. Additionally, in their sole discretion, TUPSS and UPS may:

1. require you to engage, at your expense, a third-party auditor approved by TUPSS and UPS to perform a full accounting of all improper transactions conducted at the Centers;

2. require you to disgorge all ill-gotten gains obtained from your misconduct;

3. to the extent that reimbursement of funds to customers is necessary, require that you engage, at your expense, a third-party administrator approved by TUPSS and UPS to administer such process; and/or

4. require you to indemnify and reimburse TUPSS and UPS for all costs and expenses, including attorneys' fees, incurred as a result of the misconduct.

You are reminded that, in the event that the Franchise Agreements are terminated, all post-termination requirements of the Franchise Agreements will apply, including, but not limited to, the covenant against competition and your duty to pay all outstanding amounts owed to TUPSS and UPS, respectively. Also, please be advised that should TUPSS or UPS be required to take legal action to collect any outstanding amounts or enforce any of the post-term provisions of the Franchise Agreements, TUPSS and UPS will seek reimbursement of their attorneys' fees and costs incurred in such efforts.

TUPSS and UPS reserve all of rights and remedies under the Franchise Agreements, Contract Carrier Agreements (and related agreements), and under all applicable law and in equity.

Please give this matter your immediate attention and direct to my attention all future communications relating to this matter.

Sincerely,

Leonard E. Hudson

Enclosure

cc:     The UPS Store, Inc.
        United Parcel Service, Inc.

Franchise Services Dept.

**The UPS Store®**
6060 Cornerstone Court West
San Diego, CA 92121
8584558800 Tel
8585978542 Fax
8883463623 Tel

November 6, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
1202 Lexington Avenue
New York, NY 10028-1425

Robert Hagan
Thomas Hagan
3A Inc.
1636 3rd Avenue
New York, NY 10128-3622

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
331 W. 57th Street
New York, NY 10019-3101

Robert Hagan
Thomas Hagan
Tanmor, Inc.
527 3rd Avenue
New York, NY 10016

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
1562 First Avenue
New York, NY 10028-4004

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
303 Park Avenue South
New York, NY 10010-3657

Robert Hagan
Thomas Hagan
Ridgedown, Inc.
342 Broadway
New York, NY 10013

Robert Hagan
Thomas Hagan
Robpack, LLC
328 8th Avenue
New York, NY 10001-4857

Robert Hagan
Thomas Hagan
Ridge Pen, LLC
1474 3rd Avenue
New York, NY 10028

Robert Hagan
Thomas Hagan
Tompack LLC
222 8th Avenue
New York, NY 10011

Robert Hagan
Thomas Hagan
Bigpack, LLC
694 10th Avenue
New York, NY 10019

The UPS Store

UPS_0001369



**Re:** Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate
The UPS Store® Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 5613, 6280, 6281, and 6283 (The "Centers")

Dear Messrs. Hagan:

As franchisees of The UPS Store, Inc. ("TUPSS"), you know the importance of The UPS Store® brand and the associated goodwill. The mission of the TUPSS franchise network is to make business easier and deliver convenient solutions with world-class customer service to our loyal customers. Providing world-class customer service means, among other things, acting with integrity. When TUPSS discovers dishonesty in its network, it must take strong action to protect its brand and reputation.

TUPSS has recently discovered what appears to be a widespread pattern of improper and dishonest conduct at your Centers. Specifically, TUPSS has credible evidence that your Centers have been systematically overcharging customers for UPS shipments as part of a scheme to increase your profits. This conduct is wholly improper and each potentially fraudulent transaction constitutes a material breach of numerous provisions of the Franchise Agreements and the UPS Incentive Program Contract Carrier Agreements for the Centers. Moreover, this misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation.

Accordingly, **TUPSS demands that you and the Centers immediately cease and desist charging customers in excess of the maximum UPS Retail rate and comply fully with the TUPSS and UPS operational requirements, including adhering to the strict maximum retail pricing for UPS shipping.**

TUPSS and UPS are still investigating this matter to evaluate the full scope and duration of your misconduct and determine an appropriate resolution. In connection with this investigation, **TUPSS demands that you provide an explanation for the above-referenced misconduct at the meeting with TUPSS representatives currently scheduled for November 12, 2013 in San Diego, California.** Please be advised that TUPSS takes this matter very seriously. In the event TUPSS is not satisfied with your explanation, additional actions may be taken, including but not limited to termination of the Franchise Agreements for the Centers.

The UPS Store

UPS_0001370



TUPSS and its affiliates reserve all of their rights and remedies under the Franchise Agreement and related contracts under all applicable law and in equity.

Please give this matter your immediate attention.

Sincerely,

*Jim Hillquist*
*V.P of Operations*

cc:     United Parcel Service, Inc.

The UPS Store

UPS_0001371

# Franchisee De-identification Checklist:

Center #

I. Complete and submit this checklist as indicated below.
1. The Franchisee must place an "X" next to the items below when completed.
2. The Franchisee must sign this checklist and give it to the Area Franchisee (or his or her support representative) or, if the Franchisee's Center is located in a TUPSS-owned Area, to a local TUPSS representative for verification and signature.
3. De-identification must take place immediately after franchise termination. The Area Franchisee must submit the completed checklist (along with exterior and interior photographs of the de-identified Center) to the Closure Specialist.

II. In the event of termination and/or expiration of the Franchise Agreement for any reason, you must do the following:

____1.   Pay in full any and all monies due TUPSS that accrued through the date of complete de-identification. In other words, if terminated franchisee operates the Center for any period of time after the last date of the franchise agreement's term, franchisee is responsible for the payment of royalties and related fees owed to TUPSS that accrued through and including the date when Center de-identification was completed.

____2.   Remove all The UPS Store® or Mail Boxes Etc.® exterior signage and any other exterior corporate logos or trademarks. (For instructions on removing exterior signage, see the Area Franchisee Center Closure Checklist and the Franchisee Center Closure Checklist.)

____3.   Schedule de-installation and removal of the Wi-Fi equipment by contacting the SBC Project Manager via e-mail at m24351@sbc.com. NOTE: Franchisees and Area Franchisees are not authorized to de-install and remove Wi-Fi equipment.

____4.   Remove or permanently cover all interior graphic striping elements, service icons, and wording.

____5.   Remove or permanently cover with a metal plate all corporate logos and any other reference to the corporation on your mailboxes.

____6.   Remove or permanently cover all corporate logos and any other references to the corporation on your packing stalls, trash bins, and any shopping Center signage.

____7.   Remove or permanently cover any corporate logo or trademark on your Center's carpet.

____8.   Assign and transfer to TUPSS or its designee the Center's telephone and fax numbers.

____9.   Return or provide the following to: (i) your Area Franchisee (or his or her support representative); or (ii) the local TUPSS representative (in TUPSS-owned Areas):

____a.   All interior signs and graphics depicting any corporate trademarks, service marks, copyrighted symbols, and trade dress including graphic ribbons, Point of Purchase (POP) posters, and the corporate menu board;

____b.   Any and all equipment leased from or owned by TUPSS;

___c.  All business cards, stationery, brochures, direct mail pieces, drop pieces, and any other type of information depicting corporate trade names or trademarks in any type or form, including, without limitation, Corporate Graphics International (CGI) posters and graphics;

___d.  All parcel shipping forms, labels, and any other ongoing contracts and other material depicting corporate trade names in any form or fashion;

___e.  All TUPSS proprietary hardware, software (including but not limited to Mailbox Manager and Financial Manager), disks, and computer instruction manuals;

___f.  Copies of reconfigured/reprogrammed fax machine printouts, postal machine tapes, credit card terminal imprinter copies, and Point of Sale (POS) system tapes to ensure that corporate logos are not printed on any receipts or printouts;

___g.  All corporate manuals, training materials, and any other documents provided to Franchisees that depict corporate trade names in any form or fashion;

___h.  A copy of your letter to your Center's landlord notifying him or her of the termination of your Franchise Agreement; and

___i.  Copies of letters to the local telephone directory, Yellow Pages, and other local advertisers confirming that you are no longer authorized to use the corporate name logos in connection with your business and that any advertisements should be removed upon the next printing.

___10.  Notify your local vendors that you are leaving the franchise network.

**I have completed the above referenced de-identification items.**

_____          _____
**Franchisee**                                                                   **Date**

**I have confirmed that Franchisee has completed the above referenced de-identification items.**

_____          _____
**Area Franchisee or Local TUPSS Representative**              **Date (as appropriate)**



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day Air**

February 5, 2014

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
The UPS Store Center No. 1382
1562 First Avenue
New York, NY 10028-4004

Re:  **Notice of Material Default and Termination:  Franchise Agreement for The UPS Store® Center No. 1382 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Ridge Logistics LLC that (1) you are in material breach of the franchise agreement for the Center dated April 28, 2011 (the "Franchise Agreement"); and (2) **the Franchise Agreement is terminated effective immediately, without any further notice or action from TUPSS and without an opportunity to cure.**

As you are aware, Section 12.5 of the Franchise Agreement states: "*if Franchisee's UPS Incentive Program Contract Carrier Agreement is terminated by [TUPSS's] Affiliate due to Franchisee's failure to cure any material default of that Carrier Agreement, that termination will be considered a simultaneous uncured and incurable material default under this Agreement and will automatically and simultaneously result in the immediate termination of this Agreement without any required notice or action by [TUPSS].*"  On February 5, 2014, United Parcel Service, Inc. ("UPS") terminated the UPS Store Franchisee UPS Incentive Program Contract Carrier Agreement for the Center ("Contract Carrier Agreement") due to your material breach thereof as a result of your failure to make timely payment of UPS shipping charges owed to UPS.

Additionally, Section 12.4(a) of the Franchise Agreement states: "*Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . Franchisee . . . fails to meet its financial obligations as they become due.*"  Your failure to timely pay shipping charges owed to UPS constitutes a material default under Section 12.4(a) of the Franchise Agreement.

**The UPS Store**

UPS_0001374

Further, your failure to offer UPS shipping services at the Center is a material breach of sections 7.1 and 7.2 of the Franchise Agreement, which requires you to operate the Center in compliance with TUPSS' System, Standards and Specifications, and Operations Manual.

Reference is also made to TUPSS' January 17, 2014 Notice of Material Default, a copy of which is enclosed herewith. The January 17, 2014 Notice of Material Default was issued as a result of your: (a) failure to keep the Center open and operating on January 15, 2014 in material breach of numerous provisions of the Franchise Agreement and Operations Manual; (b) use of unauthorized signage in material breach of TUPSS' center image specifications and Section 7 of the Franchise Agreement; and (c) deliberate conduct in displaying near the front door of the closed Center (and ten other centers in the Manhattan area) a copy of a summons in a lawsuit between you and your Area Franchise, conduct which reflects poorly upon the reputation of the Center and the TUPSS franchise network in material breach of Section 12.4(k) of the Franchise Agreement. That section states: _"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS's] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS's] network of Centers generally . . . ."_ Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting TUPSS to terminate your Franchise Agreement for the Center.

Further, reference is made to TUPSS's December 12, 2013 Notice of Material Default, a copy of which is enclosed herewith. The December 12, 2013 Notice of Material Default was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers in material breach of numerous provisions of the Franchise Agreement and the Contract Carrier Agreement. As you know, Section 12.4(h) of the Franchise Agreement states: _"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee receives 3 or more written notices of default from [TUPSS], within any period of 12 consecutive months, concerning any material breach by Franchisee, whether or not such breaches shall have been curable or cured after receipt of notice. Such repeated course of conduct itself shall be considered incurable and be grounds for termination of this Agreement at the same time as, or any time after, [TUPSS] notifies Franchisee of the third material default."_ As set forth above, the instant Notice of Material Default and Termination constitutes the third written notice of default for the Center within the prior 12 months.

Accordingly, for all the foregoing reasons, **TUPSS hereby confirms the termination of the Franchise Agreement immediately.**

2

UPS_0001375

Given the termination of the Franchise Agreement, the post-termination requirements of the Franchise Agreement now apply, including, but not limited to, the non-competition and non-solicitation covenants and your duty to pay all outstanding amounts owed to TUPSS and UPS, including but not limited to payment of the outstanding shipping charges owed to UPS. TUPSS will monitor the Center to confirm your compliance with your post-termination obligations. To assist you in completing the post-termination requirements, a de-identification checklist is enclosed with this letter. Also, please be advised that should TUPSS be required to take legal action to collect any outstanding amounts, obtain de-identification, or enforce any of the post-termination provisions of the Franchise Agreement, TUPSS will seek reimbursement of its attorneys' fees and costs incurred in such efforts.

TUPSS reserves all of its rights and remedies under the Franchise Agreement and related documents, under all applicable law and in equity.

Sincerely,

Don Higginson

Enclosures

cc:    United Parcel Service, Inc.
       Peter M. Ellis

3

UPS_0001376



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day**

January 17, 2014

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
The UPS Store Center No. 1382
1562 First Avenue
New York, NY 10028-4004

**Re:    Notice of Material Default: The UPS Store Center No. 1382 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Ridge Logistics LLC that **you are in material breach of the franchise agreement for the Center dated April 28, 2011** (the "Franchise Agreement") as a result of (a) failing to keep the Center open and operating on January 15, 2014, and (b) your conduct which impairs the goodwill associated with TUPSS' trademarks and which reflects materially and unfavorably upon the operation and reputation of the Center as well as the TUPSS franchise network.  Furthermore, as detailed below, **you must immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with The UPS Store, Inc. Center Operations Manual** (the "Operations Manual").

As you are aware, Section 7.1(a) of the Franchise Agreement states:  *"Franchisee shall adhere to the System developed by [TUPSS] for the operation of the Center, including the system for postal, packaging, shipping, business and communication retail service centers under the Marks, as provided herein and in the Manuals."*  Section 7.1(b) of the Franchise Agreement states: *"Franchisee shall operate the Center in compliance with [TUPSS'] then-current Standards and Specifications for external/internal center image specifications."*  As you are also aware, Section 7.2 of the Franchise Agreement states:  *"Franchisee shall strictly adhere to the Standards and Specifications set forth in the Manuals."*

Further, the Operations Manual provides that *"Each Franchisee is required to comply with current operating hours standards unless otherwise specified in his or her Franchise Agreement,"* and that *"TUPSS requires all Centers to be open for business during the same hours of the day Monday through Friday."*

**The UPS Store**

UPS_0001377

Additionally, Section 12.4(k) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS'] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS] network of Centers generally . . . ."*

TUPSS has learned that on Wednesday, January 15, 2014, you, without prior authorization, closed, during normal business hours, not just the Center, but all 11 of the centers under Messr. Hagans' control (representing approximately one fifth of all TUPSS centers in Manhattan). Moreover, near the front door of each center you prominently displayed a copy of the summons from a recent lawsuit you initiated against your Area Franchise. You also posted a sign on the front door of the centers that stated that "our store is closed" and directed customers needing assistance to call United Parcel Service's customer service number, (800) 742-5877. Your failure to comply with the Operating Hours requirements in the Operations Manual constitutes a material violation of the Operating Standards and Specifications provision of Sections 7.1(a) and 7.2 of the Franchise Agreement. Your use of unauthorized signage also violated TUPSS' center image specifications and as such also violates 7.1(b) of the Franchise Agreement.

Additionally, you have engaged in conduct that reflects poorly upon the reputation of the Center and the TUPSS franchise network. For example, among other things, your deliberate failure to keep the centers open and operating, while instead prominently displaying near the front door a summons in a lawsuit between you and your Area Franchise, reflects poorly upon the reputation of each of the centers and the TUPSS franchise network and has, in fact, damaged the goodwill of the TUPSS trademarks and brand, in violation of Section 12.4(k) of the Franchise Agreement. Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting (but not obligating) TUPSS to terminate your Franchise Agreement for the Center.

**Accordingly, TUPSS hereby notifies you of your material breach of the Franchise Agreement and demands you immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with the Operations Manual.**

UPS_0001378

TUPSS reserves all of its rights and remedies under the Franchise Agreement under all applicable law and in equity.

Sincerely,

Don Higginson

3



**ReedSmith**

Leonard E. Hudson
Direct Phone: +1 312 207 2412
Email: lhudson@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

December 12, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
The UPS Store Center No. 0523, 0561, 1141,
1227, 1382, 6281, 6280, 5308 and 4311
c/o Stephen J. Savva, Esq.
546 5th Ave.
6th Floor
New York, NY 10036

Re:    **Notice of Material Default: The UPS Store Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 6280, and 6281 (The "Centers")**

Dear Messrs. Hagan:

Reed Smith LLP represents United Parcel Service, Inc. ("UPS") and The UPS Store, Inc. ("TUPSS") in connection with various matters. Reference is made to the November 6, 2013 Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate correspondence (the "Cease and Desist"). A copy of the Cease and Desist is enclosed herewith. The Cease and Desist was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers. The Cease and Desist advised, among other things, that: (1) TUPSS had obtained credible evidence that the Centers have been systematically overcharging customers on UPS shipments as part of a scheme to increase your profits; (2) your conduct is wholly improper and each potentially fraudulent transaction constituted a material breach of numerous provisions of the written franchise agreements for the Centers (the "Franchise Agreements") as well as the UPS Incentive Program Contract Carrier Agreements (the "Contract Carrier Agreements") for the Centers; and (3) your misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation. The Cease and Desist demanded that you provide an explanation for your misconduct at the meeting with TUPSS representatives then-scheduled for November 12, 2013, in San Diego, California.

On November 12, 2013, you met with TUPSS representatives at TUPSS headquarters in San Diego, California. During that meeting you were advised of, among other things, the following:

1. As a result of misconduct relating to UPS shipping at the Centers, you would receive the instant Notice of Material Default; and

2. That TUPSS would require you to, among things, (a) immediately cease and desist all misconduct in connection with the Franchise Agreements, including overcharging for UPS shipping at the Centers; (b) develop and implement an action plan to prevent future violations relating to overcharging for UPS shipping at the Centers; and (c) acknowledge and agree that any future violations of this nature would be

US_ACTIVE-115661886.1-LEHUDSON 12/12/2013 3:16 PM

UPS_0001380

**ReedSmith**

taken very seriously, including but limited to the potential termination of the Franchise Agreements for the Centers.

During the November 12 meeting, you questioned the veracity of the allegations regarding UPS shipping overcharging and requested additional information regarding the same. That requested information has been provided. Additionally, during the November 12 meeting and in subsequent email correspondence dated December 6, 2013, you raised extraneous issues other than your Centers' misconduct. While TUPSS acknowledges your comments and concerns as well as your email, TUPSS recommends that you focus your attention exclusively on full and complete compliance with your contractual obligations under the Franchise Agreements and Contract Carrier Agreements for the Centers.

Thus, **TUPSS HEREBY NOTIFIES YOU OF AND CONFIRMS YOUR MATERIAL DEFAULT OF THE FRANCHISE AGREEMENTS FOR THE CENTERS. SIMILARLY, UPS FURTHER NOTIFIES YOU THAT YOUR CONDUCT CONSTITUTES A MATERIAL DEFAULT OF CONTRACT CARRIER AGREEMENTS.**

As you are aware, the Contract Carrier Agreements provide that, in order to receive the incentives or discounts referenced in those agreements, you agreed, among other obligations, not to charge customers more than the maximum UPS retail prices designated by UPS for the various UPS shipping services and options offered by the Centers to customers. The Contract Carrier Agreements further provide that it shall be a material default of the agreements to, among other things, charge customers in excess of UPS's designated maximum retail prices for the various UPS shipping services and options. Additionally, the Contract Carrier Agreements provide that the use of a non-compliant manifest system or incorrect rates will result in a charge of $0.50 per package or $35.00 per week, whichever is greater, and that UPS may terminate the agreements in the event that you use a non-compliant manifest system or incorrect rates and fail to cure such defaults as required.

Moreover, in the Franchise Agreements you agreed to operate the Centers in compliance with TUPSS's Standards and Specifications, which include restrictions on Franchisees' maximum retail prices for various UPS shipping services. Pursuant to the Franchise Agreements, Franchisees may not charge customers more than the maximum retail prices designated by TUPSS's Affiliate for various UPS shipping services offered by the Centers to customers. The Franchise Agreements further provide that you shall be deemed to be in material default and that TUPSS may, at its option, terminate the agreements and all rights thereunder, without affording you any opportunity to cure the default, if you materially impair the goodwill associated with TUPSS's Marks or TUPSS's rights therein, or take any action that reflects materially and unfavorably upon the operation and reputation of the Centers or upon TUPSS's franchise network generally. Additionally, the Franchise Agreements provide that any material default by Franchisees under the terms and conditions of the agreements, or any other agreement between TUPSS (or its Affiliate) and Franchisees shall be deemed to be a material default of each and every said agreement. Thus, a material default pursuant to the Contract Carrier Agreements constitutes a material default under the Franchise Agreements.

In the event the above-referenced misconduct continues at the Centers, TUPSS and UPS may take additional actions to enforce their rights under the Franchise Agreements and Contract Carrier Agreements and to protect the goodwill of the Marks and TUPSS's franchise network, including but not limited to, terminating the Franchise Agreements and Contract Carrier Agreements for each of the Centers. Additionally, in their sole discretion, TUPSS and UPS may:

1. require you to engage, at your expense, a third-party auditor approved by TUPSS and UPS to perform a full accounting of all improper transactions conducted at the Centers;

2. require you to disgorge all ill-gotten gains obtained from your misconduct;

3. to the extent that reimbursement of funds to customers is necessary, require that you engage, at your expense, a third-party administrator approved by TUPSS and UPS to administer such process; and/or

4. require you to indemnify and reimburse TUPSS and UPS for all costs and expenses, including attorneys' fees, incurred as a result of the misconduct.

You are reminded that, in the event that the Franchise Agreements are terminated, all post-termination requirements of the Franchise Agreements will apply, including, but not limited to, the covenant against competition and your duty to pay all outstanding amounts owed to TUPSS and UPS, respectively. Also, please be advised that should TUPSS or UPS be required to take legal action to collect any outstanding amounts or enforce any of the post-term provisions of the Franchise Agreements, TUPSS and UPS will seek reimbursement of their attorneys' fees and costs incurred in such efforts.

TUPSS and UPS reserve all of rights and remedies under the Franchise Agreements, Contract Carrier Agreements (and related agreements), and under all applicable law and in equity.

Please give this matter your immediate attention and direct to my attention all future communications relating to this matter.

Sincerely,

Leonard E. Hudson

Enclosure

cc:    The UPS Store, Inc.
       United Parcel Service, Inc.

**Franchise Services Dept.**

**The UPS Store®**
6060 Cornerstone Court West
San Diego, CA 92121
8584558800 Tel
8585978542 Fax
8883463623 Tel



November 6, 2013

**VIA UPS NEXT DAY**

Robert Hagan
Thomas Hagan
Ridge Assets, Inc.
1202 Lexington Avenue
New York, NY 10028-1425

Robert Hagan
Thomas Hagan
3A Inc.
1636 3rd Avenue
New York, NY 10128-3622

Robert Hagan
Thomas Hagan
Ridgepac, Inc.
331 W. 57th Street
New York, NY 10019-3101

Robert Hagan
Thomas Hagan
Tanmor, Inc.
527 3rd Avenue
New York, NY 10016

Robert Hagan
Thomas Hagan
Ridge Logistics LLC
1562 First Avenue
New York, NY 10028-4004

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
303 Park Avenue South
New York, NY 10010-3657

Robert Hagan
Thomas Hagan
Ridgedown, Inc.
342 Broadway
New York, NY 10013

Robert Hagan
Thomas Hagan
Robpack, LLC
328 8th Avenue
New York, NY 10001-4857

Robert Hagan
Thomas Hagan
Ridge Pen, LLC
1474 3rd Avenue
New York, NY 10028

Robert Hagan
Thomas Hagan
Tompack LLC
222 8th Avenue
New York, NY 10011

Robert Hagan
Thomas Hagan
Bigpack, LLC
694 10th Avenue
New York, NY 10019

**The UPS Store**

UPS_0001383



**Re:** Cease and Desist - Sales In Excess Of The Maximum UPS Retail Rate
The UPS Store® Center Nos. 0523, 0561, 1141, 1227, 1382, 4311, 5308, 5613, 6280, 6281, and 6283 (The "Centers")

Dear Messrs. Hagan:

As franchisees of The UPS Store, Inc. ("TUPSS"), you know the importance of The UPS Store® brand and the associated goodwill. The mission of the TUPSS franchise network is to make business easier and deliver convenient solutions with world-class customer service to our loyal customers. Providing world-class customer service means, among other things, acting with integrity. When TUPSS discovers dishonesty in its network, it must take strong action to protect its brand and reputation.

TUPSS has recently discovered what appears to be a widespread pattern of improper and dishonest conduct at your Centers. Specifically, TUPSS has credible evidence that your Centers have been systematically overcharging customers for UPS shipments as part of a scheme to increase your profits. This conduct is wholly improper and each potentially fraudulent transaction constitutes a material breach of numerous provisions of the Franchise Agreements and the UPS Incentive Program Contract Carrier Agreements for the Centers. Moreover, this misconduct threatens the integrity of the TUPSS system, its valuable trademarks and its reputation.

Accordingly, **TUPSS demands that you and the Centers immediately cease and desist charging customers in excess of the maximum UPS Retail rate and comply fully with the TUPSS and UPS operational requirements, including adhering to the strict maximum retail pricing for UPS shipping.**

TUPSS and UPS are still investigating this matter to evaluate the full scope and duration of your misconduct and determine an appropriate resolution. In connection with this investigation, **TUPSS demands that you provide an explanation for the above-referenced misconduct at the meeting with TUPSS representatives currently scheduled for November 12, 2013 in San Diego, California.** Please be advised that TUPSS takes this matter very seriously. In the event TUPSS is not satisfied with your explanation, additional actions may be taken, including but not limited to termination of the Franchise Agreements for the Centers.

- 2 -

The UPS Store

UPS_0001384



TUPSS and its affiliates reserve all of their rights and remedies under the Franchise Agreement and related contracts under all applicable law and in equity.

Please give this matter your immediate attention.

Sincerely,

*Jim Hillquist*
*V.P of Operations*


cc:    United Parcel Service, Inc.

**The UPS Store**

UPS_0001385

# Franchisee De-identification Checklist:
## Center #

I. Complete and submit this checklist as indicated below.
1. The Franchisee must place an "X" next to the items below when completed.
2. The Franchisee must sign this checklist and give it to the Area Franchisee (or his or her support representative) or, if the Franchisee's Center is located in a TUPSS-owned Area, to a local TUPSS representative for verification and signature.
3. De-identification must take place immediately after franchise termination. The Area Franchisee must submit the completed checklist (along with exterior and interior photographs of the de-identified Center) to the Closure Specialist.

II. In the event of termination and/or expiration of the Franchise Agreement for any reason, you must do the following:

____1. Pay in full any and all monies due TUPSS that accrued through the date of complete de-identification. In other words, if terminated franchisee operates the Center for any period of time after the last date of the franchise agreement's term, franchisee is responsible for the payment of royalties and related fees owed to TUPSS that accrued through and including the date when Center de-identification was completed.

____2. Remove all The UPS Store® or Mail Boxes Etc.® exterior signage and any other exterior corporate logos or trademarks. (For instructions on removing exterior signage, see the Area Franchisee Center Closure Checklist and the Franchisee Center Closure Checklist.)

____3. Schedule de-installation and removal of the Wi-Fi equipment by contacting the SBC Project Manager via e-mail at m24351@sbc.com. NOTE: Franchisees and Area Franchisees are not authorized to de-install and remove Wi-Fi equipment.

____4. Remove or permanently cover all interior graphic striping elements, service icons, and wording.

____5. Remove or permanently cover with a metal plate all corporate logos and any other reference to the corporation on your mailboxes.

____6. Remove or permanently cover all corporate logos and any other references to the corporation on your packing stalls, trash bins, and any shopping Center signage.

____7. Remove or permanently cover any corporate logo or trademark on your Center's carpet.

____8. Assign and transfer to TUPSS or its designee the Center's telephone and fax numbers.

____9. Return or provide the following to: (i) your Area Franchisee (or his or her support representative); or (ii) the local TUPSS representative (in TUPSS-owned Areas):

____a. All interior signs and graphics depicting any corporate trademarks, service marks, copyrighted symbols, and trade dress including graphic ribbons, Point of Purchase (POP) posters, and the corporate menu board;

____b. Any and all equipment leased from or owned by TUPSS;

UPS_0001386

_____c. All business cards, stationery, brochures, direct mail pieces, drop pieces, and any other type of information depicting corporate trade names or trademarks in any type or form, including, without limitation, Corporate Graphics International (CGI) posters and graphics;

_____d. All parcel shipping forms, labels, and any other ongoing contracts and other material depicting corporate trade names in any form or fashion;

_____e. All TUPSS proprietary hardware, software (including but not limited to Mailbox Manager and Financial Manager), disks, and computer instruction manuals;

_____f. Copies of reconfigured/reprogrammed fax machine printouts, postal machine tapes, credit card terminal imprinter copies, and Point of Sale (POS) system tapes to ensure that corporate logos are not printed on any receipts or printouts;

_____g. All corporate manuals, training materials, and any other documents provided to Franchisees that depict corporate trade names in any form or fashion;

_____h. A copy of your letter to your Center's landlord notifying him or her of the termination of your Franchise Agreement; and

_____i. Copies of letters to the local telephone directory, Yellow Pages, and other local advertisers confirming that you are no longer authorized to use the corporate name logos in connection with your business and that any advertisements should be removed upon the next printing.

_____10. Notify your local vendors that you are leaving the franchise network.

**I have completed the above referenced de-identification items.**

_____          _____
**Franchisee**                                              **Date**

**I have confirmed that Franchisee has completed the above referenced de-identification items.**

_____          _____
**Area Franchisee or Local TUPSS Representative**          **Date (as appropriate)**



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day Air**

February 5, 2014

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
The UPS Store Center No. 4311
303 Park Avenue South
New York, NY 10010-3657

Re:    **Notice of Material Default and Termination:  Franchise Agreement for The UPS Store® Center No. 4311 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Tommy's Doc Squad LLC that (1) you are in material breach of the franchise agreement for the Center dated May 31, 2011 (the "Franchise Agreement"); and (2) **the Franchise Agreement is terminated effective immediately, without any further notice or action from TUPSS and without an opportunity to cure.**

As you are aware, Section 12.5 of the Franchise Agreement states: *"if Franchisee's UPS Incentive Program Contract Carrier Agreement is terminated by [TUPSS's] Affiliate due to Franchisee's failure to cure any material default of that Carrier Agreement, that termination will be considered a simultaneous uncured and incurable material default under this Agreement and will automatically and simultaneously result in the immediate termination of this Agreement without any required notice or action by [TUPSS]."*  On February 5, 2014, United Parcel Service, Inc. ("UPS") terminated the UPS Store Franchisee UPS Incentive Program Contract Carrier Agreement for the Center ("Contract Carrier Agreement") due to your material breach thereof as a result of your failure to make timely payment of UPS shipping charges owed to UPS.

Additionally, Section 12.4(a) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . Franchisee . . . fails to meet its financial obligations as they become due."*  Your failure to timely pay shipping charges owed to UPS constitutes a material default under Section 12.4(a) of the Franchise Agreement.

The UPS Store

UPS_0001388

Further, your failure to offer UPS shipping services at the Center is a material breach of sections 7.1 and 7.2 of the Franchise Agreement, which requires you to operate the Center in compliance with TUPSS' System, Standards and Specifications, and Operations Manual.

Reference is also made to TUPSS' January 17, 2014 Notice of Material Default, a copy of which is enclosed herewith. The January 17, 2014 Notice of Material Default was issued as a result of your: (a) failure to keep the Center open and operating on January 15, 2014 in material breach of numerous provisions of the Franchise Agreement and Operations Manual; (b) use of unauthorized signage in material breach of TUPSS' center image specifications and Section 7 of the Franchise Agreement; and (c) deliberate conduct in displaying near the front door of the closed Center (and ten other centers in the Manhattan area) a copy of a summons in a lawsuit between you and your Area Franchise, conduct which reflects poorly upon the reputation of the Center and the TUPSS franchise network in material breach of Section 12.4(k) of the Franchise Agreement. That section states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or [TUPSS's] rights therein, takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon [TUPSS's] network of Centers generally . . . ."* Among other things, your conduct left customers fearful for the security of their packages and uncertain of the ability of the TUPSS brand to meet their needs in a highly competitive market. Your actions also left customers without access to their mail and retail customers unable to ship packages or transact other business at the centers. TUPSS unsurprisingly received numerous phone calls from angry and inconvenienced customers. This violation of Section 12.4(k) constitutes a material default of the Franchise Agreement, permitting TUPSS to terminate your Franchise Agreement for the Center.

Further, reference is made to TUPSS's December 12, 2013 Notice of Material Default, a copy of which is enclosed herewith. The December 12, 2013 Notice of Material Default was issued upon the discovery of a widespread pattern of improper and dishonest conduct at your Centers in material breach of numerous provisions of the Franchise Agreement and the Contract Carrier Agreement. As you know, Section 12.4(h) of the Franchise Agreement states: *"Franchisee shall be deemed to be in material default and [TUPSS] may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by [TUPSS] of the occurrence of any of the following events . . . . if Franchisee receives 3 or more written notices of default from [TUPSS], within any period of 12 consecutive months, concerning any material breach by Franchisee, whether or not such breaches shall have been curable or cured after receipt of notice. Such repeated course of conduct itself shall be considered incurable and be grounds for termination of this Agreement at the same time as, or any time after, [TUPSS] notifies Franchisee of the third material default."* As set forth above, the instant Notice of Material Default and Termination constitutes the third written notice of default for the Center within the prior 12 months.

Accordingly, for all the foregoing reasons, **TUPSS hereby confirms the termination of the Franchise Agreement immediately.**

2

UPS_0001389

Given the termination of the Franchise Agreement, the post-termination requirements of the Franchise Agreement now apply, including, but not limited to, the non-competition and non-solicitation covenants and your duty to pay all outstanding amounts owed to TUPSS and UPS, including but not limited to payment of the outstanding shipping charges owed to UPS. TUPSS will monitor the Center to confirm your compliance with your post-termination obligations. To assist you in completing the post-termination requirements, a de-identification checklist is enclosed with this letter. Also, please be advised that should TUPSS be required to take legal action to collect any outstanding amounts, obtain de-identification, or enforce any of the post-termination provisions of the Franchise Agreement, TUPSS will seek reimbursement of its attorneys' fees and costs incurred in such efforts.

TUPSS reserves all of its rights and remedies under the Franchise Agreement and related documents, under all applicable law and in equity.

Sincerely,


Don Higginson

Enclosures

cc:     United Parcel Service, Inc.
        Peter M. Ellis

3

UPS_0001390



**The UPS Store**
Corporate Headquarters
6060 Cornerstone Court W
San Diego, CA 92121
858.455.8800 Tel

**Via UPS Next Day**

January 17, 2014

Robert Hagan
Thomas Hagan
Tommy's Doc Squad LLC
The UPS Store Center No. 4311
303 Park Avenue South
New York, NY 10010-3657

Re:    **Notice of Material Default: The UPS Store Center No. 4311 (the "Center")**

Dear Messrs. Hagan:

The UPS Store, Inc. ("TUPSS") hereby notifies you and your affiliated entity Tommy's Doc Squad LLC that **you are in material breach of the franchise agreement for the Center dated May 31, 2011** (the "Franchise Agreement") as a result of (a) failing to keep the Center open and operating on January 15, 2014, and (b) your conduct which impairs the goodwill associated with TUPSS' trademarks and which reflects materially and unfavorably upon the operation and reputation of the Center as well as the TUPSS franchise network. Furthermore, as detailed below, **you must immediately comply with all terms of the Franchise Agreement, including your obligation to keep Operating Hours consistent with The UPS Store, Inc. Center Operations Manual** (the "Operations Manual").

As you are aware, Section 7.1(a) of the Franchise Agreement states: *"Franchisee shall adhere to the System developed by [TUPSS] for the operation of the Center, including the system for postal, packaging, shipping, business and communication retail service centers under the Marks, as provided herein and in the Manuals."* Section 7.1(b) of the Franchise Agreement states: *"Franchisee shall operate the Center in compliance with [TUPSS'] then-current Standards and Specifications for external/internal center image specifications."* As you are also aware, Section 7.2 of the Franchise Agreement states: *"Franchisee shall strictly adhere to the Standards and Specifications set forth in the Manuals."*

Further, the Operations Manual provides that *"Each Franchisee is required to comply with current operating hours standards unless otherwise specified in his or her Franchise Agreement,"* and that *"TUPSS requires all Centers to be open for business during the same hours of the day Monday through Friday."*

**The UPS Store**

UPS_0001391